**Carl O. CARLSON, Jr., Appellant (Plaintiff),**

v.

**E. Leva CARLSON and Citizens National Bank and Trust Company, a National Bank, Appellees (Defendants).**

No. 91–143.

Supreme Court of Wyoming.

June 29, 1992.

Julie Nye Tiedeken, Cheyenne, for appellant.

Raymond B. Hunkins of Jones, Jones, Vines & Hunkins, Wheatland, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

CARDINE, Justice.

In this long-standing dispute concerning a lease and potential option to buy a family farm we review the district court's refusal to vacate a default judgment entered against appellant and whether the district court erred in granting the appellee a new trial.

We affirm in part and reverse in part.

The appellant asks us to review the following issues:

I. Was it an abuse of discretion to grant a new trial to E. Leva Carlson?

A. Did Appellee, by filing a Motion to Bifurcate the Trial, waive her right to complain that the bifurcation was prejudicial?

B. Was it error to allow testimony from the Bank employees?

C. Was the jury verdict supported by substantial and sufficient evidence?

D. Did the trial court improperly substitute its Judgment for that of the jury?

II. Did the trial court abuse its discretion when it denied Carl Carlson, Jr.'s Motion to Set Aside Default Judgment?

Carl Carlson, Jr. (Carl) worked on his parents' farm, known as the Carlson place, as he was growing up. After he finished high school, he worked in an iron mine while his father and one brother remained on the family farm. His father's health deteriorated and his brother had not taken care of the farm properly, so Carl and his wife moved back and began operating the farm in 1969. In 1970, Carl executed a lease agreement with his mother, E. Leva Carlson (Mrs. Carlson). Mrs. Carlson agreed to accept a percentage of the crops, a percentage of the cow-calf operation, and some pasture rent as compensation for the lease to Carl. In 1970, Mr. and Mrs. Carlson left the farm and moved into a home near Yoder. Carl's father passed away in 1971.

In 1973, Carl decided that in order to run the farm properly he would need to build some hog sheds. When he spoke to his mother about the hog sheds, she indicated that she could not afford them, but he could build them because the farm would

be his someday. Mrs. Carlson decided that, in order to be fair to Carl and protect his investments and improvements on the farm, they should have an agreement in writing. Mrs. Carlson and Carl both visited an attorney and had an agreement prepared which they signed. In the "1973 agreement," Mrs. Carlson granted Carl "an exclusive option to purchase" the farm in the event of her death.

In 1985, Mrs. Carlson had a second written lease drawn up which she and Carl signed to set out their agreement in more detail and to clarify the parties' respective rights and duties. This agreement was the third document prepared in reference to the farm. Instead of providing clarity, the agreements created inconsistencies and have become the focus of this protracted and much-litigated dispute.

Citizens Bank carried a loan on Mrs. Carlson's farm. From time to time Mrs. Carlson would ask the bank to rewrite her note and extend her more credit. Citizens would renew the note and advance her additional funds or credit.

Sometime during 1985, Citizens Bank became aware that Mrs. Carlson had granted her son Carl an option allowing him to buy the farm in the event she decided to sell it. In a letter dated January 4, 1985, Citizens advised Mrs. Carlson that she should pursue one of the three alternatives listed in the letter, one of which included selling the farm, before March 11, 1985, the due date of the note. In March of 1985, Mrs. Carlson gave the bank a mortgage on her farm to secure their loan. The bank's records contained a notation that "[Mrs. Carlson] has retained an attorney from Wheatland to begin to break the agreement that she has with her son and then sell the land."

Departing from their usual practice, Citizens Bank applied all of Mrs. Carlson's 1986 payment ($14,000.00) from the sale of her cattle to principal rather than interest. In 1986 Citizens would not renew the note for Mrs. Carlson because the interest was not current. The next entry in the bank's loan records indicates "New to list. [Mrs. Carlson] is attempting to get her son to buy some of her land so this debt is paid in full. We have talked foreclosure as a possibility. This family unit does not get along with one another."

Citizens Bank said it wanted full payment by 1987. Mrs. Carlson lived on a fixed income from social security and was concerned about meeting her obligations. Eventually, Mrs. Carlson's attorney, at her request, sent a letter to Carl which informed him of her intention to sell the farm and terminate the lease.

Faced with losing nearly 20 years of personal and financial investment in the farm, Carl retained counsel and eventually filed suit against Mrs. Carlson and Citizens Bank. In his complaint, appellant alleged that his mother had agreed to lease the farm to him for her life; gave him an option to purchase the farm at her death; and that his mother had breached their agreement by terminating the lease and trying to void the option. Appellant also claimed that Citizens Bank had wrongfully interfered with the contractual relationship between he and his mother and that Citizens had engaged in a conspiracy with his mother. The complaint sought compensatory damages, punitive damages, and a declaratory judgment to establish the respective rights of the parties under the agreements. Both Mrs. Carlson and Citizens Bank denied the allegations in the complaint and asserted various affirmative defenses.

Before the case went to trial, an appeal was taken to this court after the district court denied a motion to disqualify the attorney representing Citizens Bank who had also represented Carl and his mother in the past. The attorney withdrew after this court reversed the ruling of the district court and entered an order disqualifying that attorney. *Carlson v. Langdon (Carlson I)*, 751 P.2d 344, 351 (Wyo.1988).

This case next appeared before this court in 1989 after the district court entered summary judgment in favor of Mrs. Carlson and Citizens Bank. *Carlson v. Carlson (Carlson II)*, 775 P.2d 478, 479 (Wyo.1989). After deciding that ambiguity was present in the agreements which made their construction as a matter of law inappropriate,

we reversed the summary judgment entered by the district court. *Carlson II*, 775 P.2d at 484.

The resident district judge became ill, and Judge Raper was assigned to try the case. When presented with the issue of whether the trial should be bifurcated, Judge Raper determined that "the entire case should be tried in one piece." However, the resident district judge recovered from his illness, was re-assigned to the case, and decided that the issues in the trial should be bifurcated because "perhaps a good deal of judicial economy would be obtained by first determining whether or not there was a contract between the Carlsons." On remand, the trial was bifurcated. The first part of the trial was to decide whether the agreements afforded Carl contractual rights. The second part was to address whether Citizens Bank and Mrs. Carlson had interfered or deprived Carl of the rights causing damages. The first portion of the trial ended with a special verdict in favor of Carl and a finding that Mrs. Carlson did not have a right to terminate the 1985 lease and thereby terminate the option in the 1973 agreement.

After the verdict, Citizens Bank filed a motion to empanel a new jury prior to trial of the second phase, contending that the first jury was biased against Citizens because it had heard evidence against Citizens during the first phase without the benefit of Citizens' response. Appellant filed a motion in opposition to empaneling a new jury stating that Citizens had agreed to the bifurcation and consented to not actively participating in the first trial phase. The second phase of the trial (damages) was delayed because of district court scheduling conflicts.

Partial judgment upon special verdict was entered by the district court. Mrs. Carlson filed a motion for a new trial which the district court did not rule upon at that time. Subsequently, the district judge discharged the jury. Appellant filed a motion asking the district court to refrain from discharging the jury. Next appellant filed a petition with this court seeking a Writ of Mandamus and a Writ of Prohibition preventing the district judge from releasing the jury and ordering him to proceed with the second phase of the trial.

We issued a Writ of Prohibition ordering the district judge to refrain from discharging the jury until both phases of the bifurcated trial had been completed and a Writ of Mandamus ordering the district judge to complete the second phase of the trial. Nevertheless, the jury was not recalled; a different jury was empaneled. The second phase of the trial was held, and the jury returned a verdict in favor of Citizens and Mrs. Carlson. It found that Citizens did not wrongfully interfere with Carl's contractual rights, that Citizens and Mrs. Carlson did not conspire to deprive Carl of his property or contractual rights, and that Carl should recover no damages. Mrs. Carlson renewed her motion for a new trial on the first phase on the same day judgment was entered on the second phase. Her motion for new trial was granted.

On March 13, 1991, the new trial of the first phase was set for May 14, 1991. At this point in time, it seems clear that the lengthy proceedings, which include removal of attorney, three appeals to the supreme court, and two separate jury trials, have, except for Citizens, consumed the parties' financial resources and sapped appellant's strength to proceed with resolution of this dispute. It is a sad commentary on the civil justice system. And so, on March 25, 1991, Carl Carlson consented to withdrawal of his counsel. The district judge entered an order permitting his counsel to withdraw on April 1, 1991. The new trial was set for May 14, 1991. A certified mail notice of the setting was delivered and signed for by Carl. On May 14, 1991, Mrs. Carlson and thirty-eight members of the prospective jury appeared for trial, but Carl did not appear. The court entered a default judgment against Carl. Carl's counsel subsequently filed a motion to set aside the default judgment, which was denied by the district court. A timely notice of appeal was filed.

## DEFAULT JUDGMENT

■ Appellant urges us to reverse the default judgment entered by the district

court. Wyoming Rule of Civil Procedure 55 governs default judgments as follows:

(b) **Judgment.**—Judgment by default may be entered as follows:

\* \* \* \* \* \*

(2) By the Court.—In all other cases the party entitled to a judgment by default shall apply to the court therefor; \* \* \*

(c) **Setting aside default.**—For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered may likewise set it aside in accordance with Rule 60(b).

Rule 60(b), in effect at the time, allows judgments to be set aside on the following grounds:

(b) **Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc.**—On motion, and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) \* \* \*. The motion shall be made within one (1) year after the judgment, order, or proceeding was entered or taken.

Two competing policy considerations guide a decision to set aside a default judgment. The justice system and litigants have an interest in the finality of judgments and efficiency in litigation. However this court has long recognized that "default judgments are not favored in the law" and "[i]t is preferable that cases be tried on their merits." *Spitzer v. Spitzer*, 777 P.2d 587, 591 (Wyo.1989); *see also Augusta Fiberglass Coatings, Inc. v. Fodor Contracting, Corp.*, 843 F.2d 808, 811 (4th Cir.1988).

In reviewing motions made under Rule 60(b)(1), this court has said:

Rule 60(b) provides courts with the means of relieving a party from the oppression of a final judgment or order on a proper showing where such judgment is unfairly or mistakenly entered. *Kennedy v. Kennedy*, Wyo., 483 P.2d 516 (1971). The rule is remedial and is to be liberally construed, *Spomer v. Spomer*, Wyo., 580 P.2d 1146 (1978), but the movant carries the burden of bringing himself within its provisions. *Atkins v. Household Finance Corporation of Casper, Wyoming*, Wyo., 581 P.2d 193 (1978).

\* \* \* The granting of relief under this subdivision [Rule 60(b)(1)] is a matter of the exercise of discretion by the trial court, and appellate review is limited to the question of whether the trial court abused its discretion. *U.S. Aviation, Inc. v. Wyoming Avionics, Inc.*, Wyo., 664 P.2d 121 (1983). In exercising its discretion, the trial court must consider whether the movant has established one of the enumerated grounds for relief and whether he has demonstrated a meritorious defense. Rule 60(b), W.R.C.P.; *U.S. Aviation, Inc., supra.*

*S.C. Ryan, Inc. v. Lowe*, 753 P.2d 580, 582 (Wyo.1988); *see also Claassen v. Nord*, 756 P.2d 189, 193 (Wyo.1988). Rules 55(c) and 60(b) are intended to promote decisions on the merits when possible. We review this record, keeping in mind that our review is limited to the question of whether the trial court abused its discretion. We also examine whether the appellant has established one of the enumerated grounds for relief and whether he has demonstrated a meritorious defense.

Federal courts reviewing trial court decisions under the nearly identical federal Rule 60 utilize a similar analysis. *Richmark Corp. v. Timber Falling Consultants, Inc.*, 937 F.2d 1444, 1449 (9th Cir. 1991); *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir.1988); *INVST Financial Group, Inc. v. Chem–Nuclear Systems, Inc.*, 815 F.2d 391, 398 (6th Cir.1987). Federal courts have articulated their test this way:

The decision on a Rule 60(b) motion to set aside entry of a judgment by default is controlled by three factors: "1. Whether the plaintiff will be prejudiced; 2. Whether the defendant has a meritorious defense; and 3. Whether culpable

conduct of the defendant led to the default."

*Amernational Indus., Inc. v. Action-Tungsram, Inc.,* 925 F.2d 970, 976 (6th Cir.1991).

 We review the record to determine whether the district court abused its discretion in refusing to set aside the default judgment entered against appellant. On January 31, 1991, the district court granted Mrs. Carlson's motion for a new trial on the first phase of the litigation between these parties. The notice of setting for the new trial was filed on March 13, 1991. Very shortly thereafter, on March 25, 1991, a consent to withdrawal of counsel which Carl had signed was filed with the district court. The district judge sent Carl a letter on March 25, 1991, which informed him that he should seek new counsel "as soon as possible" because "[t]his case has been lingering in court since 1986 and I intend to keep May 14, 1991, as the trial date."

The order permitting Carl's counsel to withdraw was filed on April 1, 1991, just a little over a month before the scheduled trial. The district court entered its order before replacement counsel had entered an appearance which is not a favored practice. Rule 102(c) of the Uniform Rules for the District Courts of the State of Wyoming provides "[c]ounsel will not be permitted to withdraw from a case except upon court order." In contrast, Rule 19.02 of the Wyoming Rules of Appellate Procedure provides "[n]o attorney or firm who has appeared in a cause on appeal may withdraw from it without written consent of the court filed with the clerk. Such consent may be conditioned upon substitution of other counsel." The Uniform District Court Rules do not require that substitute counsel be obtained before the court allows withdrawal of an attorney. However, a better practice, and one that will avoid the difficulties here presented, would be to condition withdrawal on substitution of new counsel. This practice would avoid the waste of time and resources that may occur in a case such as this. Nevertheless, the order permitting withdrawal of appellant's attorney was permissible under the rules for district courts.

Upon appellant's failure to employ counsel and appear on May 14, 1991, default judgment was entered against him. The default judgment stated that, in addition to the notice of setting, the court had communicated with appellant on two occasions and the court reporter had communicated with appellant on two occasions, yet appellant had neglected to communicate with the district court. The judgment ordered that appellant be assessed the costs of summoning the thirty-eight prospective jury members who were called to court.

New counsel entered an appearance for Carl on May 16, 1991. Carl claims that excusable neglect was present for two reasons. First, he claims that he attempted to hire new counsel, but difficulties beyond his control prevented him from securing new counsel. He also claims that he had been injured, underwent back surgery, and was, therefore, unable to appear in court on the day set for trial.

Carl sought to obtain new counsel immediately after his counsel withdrew. In that effort, he contacted a second attorney who led him to believe that he would represent appellant and seek a continuance of the May 14, 1991 trial date. On Monday, May 6, 1991, Carl realized that the second attorney was not going to represent him or obtain a continuance. He contacted a third attorney. The third attorney indicated he would talk to Carl's original attorney and get back in touch with Carl. The third attorney never did contact Carl prior to the trial date of May 14, 1991.

Appellant received less than exemplary service from the two additional attorneys he contacted seeking representation. Under our Rules of Professional Conduct, clients are entitled to prompt responses to their inquiries. *See* Wyoming Rules of Professional Conduct 1.4. Of course these are mere allegations in an affidavit, and there is still a question of whether a lawyer-client relationship existed between appellant and either of the two attorneys he subsequently contacted.

■ Because appellant was unsuccessful in securing new counsel, he was not represented when the date of trial came. Courts have recognized that unrepresented persons should be treated somewhat differently when default judgments are entered against them. *Fuller v. Quire*, 916 F.2d 358, 361 (6th Cir.1990) (trial judge properly granted relief from judgment in order to avoid penalizing plaintiff who displayed reasonable diligence); *Wallace v. McManus*, 776 F.2d 915, 917 (10th Cir.1985) (uncounselled plaintiff should not be penalized for a clerical error that was none of her doing). *See also Sanford v. Arjay Oil Co.*, 686 P.2d 566, 571 (Wyo.1984). Appellant's problems are at least in part due to the failure of the justice delivery system to operate speedily, fairly and at reasonable cost to resolve this dispute. Appellant contacted several attorneys seeking representation. He was diligent in seeking new counsel but was still unrepresented.

The other circumstance that appellant claims contributed to his failure to enter an appearance on the date of trial was his back injury and subsequent surgery. Appellant claims that he contacted the district court clerk on May 8, 1991, and told her that he was sick and disabled and would be unable to attend the trial. On the same day, appellant attempted to secure a letter from his doctor in Ft. Collins, Colorado explaining his medical condition. Appellant sent his daughter to Ft. Collins to obtain the letter from his doctor. The letter from Carl's doctor, dated May 10, 1991, stated that he had recently undergone "a large back surgery" and therefore it would be "very difficult for him to travel to court or be involved in any court proceedings for a period of at least two months." Carl mailed the letter by certified mail to the district court on May 10, 1991. He expected the judge to receive the letter by Monday, May 13, 1991. After inquiring with the post office, Carl determined that the district court had not received the letter and therefore directed his daughter to file the letter with the district court. The letter was filed with the district court on May 14, 1991.

■ A hearing on Carl's motion to set aside the default judgment took place with his new counsel present on May 20, 1991. At the hearing, Carl's counsel summarized the interplay of these two circumstances as follows:

> [H]ere is a man who is flat on his back from surgery. He thinks he has an attorney lined up. The attorney does nothing. He calls around trying to get other people. I can understand why he didn't find an attorney. I can see him calling people saying this case has gone to trial twice. It's been to the Supreme Court three times. Will you represent me? The trial is in six weeks. It would be impossible to find someone.
>
> \* \* \* \* \* \*
>
> He was really put in a bind. His attorneys were allowed to withdraw before other counsel appeared and he is madly trying to find somebody.

Does what occurred in this case constitute excusable neglect? We have defined excusable neglect as "such behavior as might be the act of a reasonably prudent person under the circumstances." *Booth v. Magee Carpet Co.*, 548 P.2d 1252, 1255 (Wyo. 1976). Appellant undertook efforts to find substitute counsel and to inform the court of his back surgery. His lack of success does not result from a lack of effort or diligence. The district judge, in denying the motion to set aside default judgment, stated:

> It just comes down to this: I think this case is over. I'm looking at my trial schedule, I couldn't even look at this thing again until next November and here it's been going on four or five years.
>
> Anyway, that is my order. I guess I'm rambling on here for no reason. I don't blame you [appellant's counsel], but I've had it with this one.

A default judgment should be set aside if there is present excusable neglect. Appellant's explanation for his failure to appear in this case was the result of excusable neglect. W.R.C.P. 55 and 60(b); *S.C. Ryan*, 753 P.2d at 582.

Appellant has previously prevailed on appeal, obtained reversal of summary judgment entered against him, and won a jury verdict on his lease and option claim. *Carlson II*, 775 P.2d at 484. Thus, he has presented a meritorious underlying claim. *Id.; U.S. Aviation, Inc. v. Wyoming Avionics, Inc.*, 664 P.2d 121, 127 (Wyo. 1983). We cannot discern undue prejudice to appellee that would result from setting aside this default judgment. The notice of appeal from the district court's refusal to set aside the default judgment was filed within a few days after the hearing on the motion. It is unlikely, therefore, that appellee relied upon the default judgment to her prejudice.

The district court abused its discretion in refusing to set aside the default judgment when appellant was able to demonstrate excusable neglect, a meritorious claim, and lack of prejudice to appellee. In the interest of justice, the default judgment is set aside to afford a full hearing on the merits.

## MOTION FOR NEW TRIAL

On January 31, 1991, the district court granted Mrs. Carlson a new trial on the issues in the first phase, pertaining to the meaning, intent and rights of the parties under the three agreements claimed to grant a lease and option to buy. The new trial was granted pursuant to W.R.C.P. 59. Rule 59 allows for new trials as follows:

(a) **Grounds.**—A new trial may be granted to all or any of the parties, and on all or part of the issues. * * * Subject to the provisions of Rule 61, a new trial may be granted for any of the following causes:

* * * * * *

(6) That the verdict, report or decision is not sustained by sufficient evidence or is contrary to law[.]

We review grants of new trials keeping in mind that

[a] trial court has broad discretion when it is ruling upon a motion requesting a new trial; its decision on the motion will not be overturned absent an abuse of that discretion.

*Medlock v. Merrick*, 786 P.2d 881, 883 (Wyo.1990) (citing *DeJulio v. Foster*, 715 P.2d 182 (Wyo.1986)).

During the hearing on the motion for a new trial, the district judge made the following findings and remarks:

I will tell you something, gentlemen, obviously this is going to be something in the end for the Supreme Court to sort out, probably. I don't think I made a mistake in the first instance to bifurcate the trial. In fact, I think probably the two separate juries was the proper way to go here because I think there were two separate issues here and I made an error in allowing from the very outset in the first part of this trial so much evidence to come in relative to the bank because *I do believe that confused the first jury.* The first jury should have only been interested in this agreement, was there an agreement, if there was an agreement, was Mrs. Carlson bound by the option or was she not bound by the option and did he have a lifetime lease. That was the entire question that should have been before that first jury.

*We certainly confused them.* We started putting the bank officers on the stand to be examined and cross-examined relative to their participation and whatever they had with Mrs. Carlson in attempting to collect her loan and all of that went to the issue of the bank's interest in this entire matter and didn't have anything to do with the agreement at all. * * *

* * * *For whatever reason, I think that jury based their decision a good deal upon what they heard about the bank and very little on what they heard about the agreement.* [emphasis added]

■ Appellant argues that we should give less deference to the district court's *granting* a new trial than we would to the *denial* of a new trial because in the denial there is consistency with the jury's verdict. In other words, appellant's argument goes, if a district court *denies* a new trial, we should accord that decision great deference; but if the district court *grants* a new trial, contrary to the jury's verdict, we

should conduct a more exacting review thereby giving weight and deference to the jury's determinations.

We decline to accept appellant's invitation to provide a different standard of review. The abuse of discretion standard has served long and well without regard to whether the court granted or denied a motion for new trial. It is the standard we apply in this case. We begin by noting that a trial judge's decision to grant a new trial, contrary to a jury verdict, does not necessarily undermine the respect given to juries or the vitality juries provide to the justice system. We have said:

> Rule 59(a), W.R.C.P. allows courts, for the grounds enumerated, to set aside the effect of a jury verdict and grant a new trial when not satisfied with the jury verdict. A court's exercise of the power to grant a new trial is not a derogation of the right of a jury trial but is one of that right's historic safeguards. *Town of Jackson v. Shaw*, [569 P.2d 1246 (Wyo. 1977)] and *Aetna Casualty & Surety Co. v. Yeatts*, 122 F.2d 350 (4th Cir.1941). The power to grant a new trial gives the trial court the power to prevent a miscarriage of justice. 11 Wright & Miller, Federal Practice and Procedure: Civil § 2803 (1973) (discussing similar Rule 59, F.R.C.P.). Trial courts should grant new trials whenever, in their judgment, the jury's verdict fails to administer substantial justice to the parties. *Brasel and Sims Construction Co. v. Neuman Transit Co.*, Wyo., 378 P.2d 501 (1963), quoting from *Kester v. Wagner*, 22 Wyo. 512, 145 P. 748 (1915).

*Cody v. Atkins*, 658 P.2d 59, 63 (Wyo.1983).

■ We cannot say that the district court was incorrect in its assessment that the jury was confused by the volume of evidence that was offered regarding the Bank during the first phase of the trial. The Bank was a defendant, and appellant was entitled to put in proper evidence to support his claim against Mrs. Carlson. The trial court believed that the jury was misled. Because the trial judge has the advantage of observing first hand the impact of such evidence, we defer to that judgment and therefore find that the grant of a new trial to appellee on the issue in the first phase was not an abuse of discretion.

## BIFURCATING THE ISSUES

Wyoming Rule of Civil Procedure 42(b) allows separate trials of claims as follows:

> The court *in furtherance of convenience or to avoid prejudice,* may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues.

■ We have approved of district courts' decisions to conduct separate trials on distinct and independent issues. *See Matter of Adoption of RHA*, 702 P.2d 1259, 1264 (Wyo.1985) (upholding bifurcation of adoption proceedings); *Tremblay v. Reid*, 700 P.2d 391, 398–99 (Wyo.1985) (allowing severance of a defamation action from a breach of contract action). However when the issues to be tried are not clearly separate and distinct, they do not lend themselves to bifurcation. In the absence of clearly separate and distinct issues, bifurcation may result in prejudice to one or more of the parties. As the district judge recognized here, there was substantial confusion since the evidence and the issues were overlapping.

We recognize a limitation on the discretion of a district court to bifurcate. A trial may be bifurcated only when the issues are clearly distinct and the bifurcation will not work a hardship against either party. Although bifurcation may result in judicial economy in some cases, it often works an injustice and does not achieve judicial economy when trials must be conducted again. Other courts have noted:

> We do hold that under the circumstances presented by this appeal the issues of liability and damages, exemplary or normal, are not so distinct and separable that a separate trial of the damage issues may be had without injustice. The question of damages is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and

uncertainty which would amount to a denial of a fair trial.

*United Air Lines, Inc. v. Wiener,* 286 F.2d 302, 306 (9th Cir.1961) (citing *Gasoline Products Co., Inc. v. Champlin Refining Co.,* 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931)).

■ A fair trial is often thwarted when interwoven issues are tried separately.

When issues are "so interwoven" that their independent trial would cause "confusion and uncertainty, which would amount to a denial of a fair trial," they must be tried together.

*Martin v. Bell Helicopter Co.,* 85 F.R.D. 654, 659 (D.Colo.1980) (quoting *Gasoline Products,* 283 U.S. at 500, 51 S.Ct. at 515). The trial court's comments quoted above demonstrate that this was not a case in which the issues could be properly tried separately. There was substantial confusion since the evidence and the issues were overlapping. The bifurcation resulted in the denial of a fair trial. Therefore, a new trial, in which a jury will hear the entire case at one time, absent bifurcation, must be granted.

■ The use of *two different juries* to hear the issues in this case also supports granting a new trial. Even when bifurcation is proper, the separate phases should be heard by the same jury.

Some question has been raised whether issues can be ordered tried before different juries. There is no constitutional problem in ordering separate trials of issues, with the same jury to sit in each trial. It seems to be accepted that the better and preferred practice is to use the same jury for all issues, even though it may hear the issues at different times.

9 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2391 at 302 (1971) (citing *O'Donnell v. Watson Bros. Transp. Co.,* 183 F.Supp. 577, 580 (N.D.Ill.1960)). At least two courts have found particular submissions to separate juries improper because the issues were so interwoven that a fair trial could not be obtained under that procedure. *Franchi Const. Co., Inc. v. Combined Ins. Co.,* 580 F.2d 1, 7–8 (1st Cir.1978); *United Air Lines, Inc. v. Wiener,* 286 F.2d 302, 306 (9th Cir.), *cert. denied* 366 U.S. 924, 81 S.Ct. 1352, 6 L.Ed.2d 384 (1961).

Fairness, logic and case law support our decision to remand the entire case, rather than one issue, for retrial. In *Wheatland Irrigation Dist. v. McGuire,* 562 P.2d 287, 291–92, 303 (Wyo.1977), we remanded for an entirely new trial when confining the retrial to one issue would result in injustice. In this case we believe, as other courts have, that a new trial limited to one issue would repeat the confusion, and result in prejudice that would amount to denial of a fair trial. *Payton v. Abbott Labs,* 780 F.2d 147, 155 (1st Cir.1985). *See also Miller v. Fairchild Indus., Inc.,* 876 F.2d 718, 731 (9th Cir.1989); *Eximco, Inc. v. Trane Co.,* 748 F.2d 287, 290 (5th Cir.1984). The general rule the United States Supreme Court established in *Gasoline Products* is applicable here:

even when only one issue is tainted by error or prejudice, a new trial must nevertheless be granted on all issues "unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice."

*Eximco,* 748 F.2d at 290 (quoting *Gasoline Products,* 283 U.S. at 500, 51 S.Ct. at 515).

Were we to here remand for a new trial on the lease/option issue only, a verdict in appellant's favor would be meaningless, for the jury verdict in the second trial and would still, in effect, deny appellant any recovery. Faced with a similar dilemma, the Eighth Circuit Court stated:

The jury awarded Eden damages only on its antitrust claims; our reversal of the judgment entered with respect to those claims leaves Eden without any recovery for its successful contract claims. In such circumstances we normally would remand the contract claims to the District Court for a new trial solely on the issue of damages. The circumstances of this case * * * demand a departure from our normal procedure.

*Ryko Mfg. Co. v. Eden Services,* 823 F.2d 1215, 1239, 92 A.L.R.Fed. 387 (8th Cir.1987) (citations omitted). Therefore, in order to

ensure that appellant has a remedy, should he be successful in proving a valid option, the entire case must be retried. We remand the entire cause for retrial upon all issues.

### CONCLUSION

Although our result does not achieve a final disposition of this long-standing family dispute, it is warranted by the facts in the record and the law. The default judgment should have been set aside as there was excusable neglect, and the granting of a new trial to appellee was proper since the record supported the district court's supposition that the jury was misled and confused and therefore its verdict did not render substantial justice. The bifurcation and trial before two different juries deprived appellant of substantial justice and his fair day in court. Thus, we vacate the default judgment and affirm the district court's order granting a new trial on the first issue. The cause is remanded for a new trial on all issues to be tried at one time.

Affirmed in part, reversed in part, and remanded for trial.