2012 WY 28

Vincent ROSTY, Appellant (Defendant),

v.

Shari SKAJ and Steve Skaj, Appellees (Plaintiffs).

Nos. S–11–0063, S–11–0136.

Supreme Court of Wyoming.

Feb. 24, 2012.

Representing Appellant: Hampton K. O'Neill and Timothy M. Stubson, Brown, Drew & Massey, LLP, Casper, Wyoming. Argument by Mr. Stubson.

Representing Appellees: Robert T. Ingram, Ingram Olheiser, P.C., Casper, Wyoming; Timothy W. Miller, Miller Law Office, Casper, Wyoming. Argument by Mr. Ingram.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] In these consolidated appeals, Appellant, Vincent Rosty, challenges the district court's order entering default judgment and the district court's denial of his motion to set aside entry of default and default judgment. We affirm in part and reverse in part.

## ISSUES

[¶ 2] Appellant presents the following issues:

1. Whether Appellant timely appealed the district court's ruling denying Appellant's motion to set aside entry of default and motion to set aside default judgment?

2. Whether the district court erred by permitting the hearing on default judgment to proceed when Appellees failed to provide notice to Appellant of the hearing as required by Rule 55(b)(2)?

3. Whether the district court violated Appellant's due process rights by entering default judgment without allowing Appellant a meaningful opportunity to present evidence on issues of fault and damages?

4. Whether the default judgment issued by the district court is void because of Appellees' failure to properly serve the Appellant with the Complaint and Summons?

5. Whether the district court abused its discretion by failing to set aside the entry of default and the default judgment in this case?

6. Whether the district court's award of punitive damages was permitted where the Appellees failed to provide any evidence of Appellant's wealth?

## FACTS

[¶ 3] Appellees, Shari and Steve Skaj, brought suit against R & R Roofing, Inc., Steve Rosty, and Appellant to recover damages caused when an idling dump truck that had been driven by Appellant was knocked into gear, pinning Ms. Skaj against a motor home. The complaint alleged that the dump truck and R & R Roofing were owned by defendant Steve Rosty, and that the truck was used by Appellant in his employment with the business. The complaint stated causes of action for negligence and negligent infliction of emotional distress, and sought to recover compensatory and punitive damages from all defendants.

[¶ 4] According to the complaint, Appellant was using the truck to deliver roofing supplies when he stopped the truck in an alley behind Ms. Skaj's house. He exited the vehicle and left the engine running with the transmission in neutral, but failed to engage the parking brake. Some roofing material that had been placed in the cab of the truck became dislodged, knocking the transmission into gear and causing the truck to move forward toward the motor home, which was also parked in the alley. Ms. Skaj was severely injured when she was caught between the truck and the motor home. After freeing Ms. Skaj, Appellant took her into her house and placed her on the couch. He then left and drove the truck several miles to the R & R Roofing shop. Mr. Skaj subsequently arrived at the residence and discovered his

wife's "nearly lifeless" body on the couch. The complaint alleged that Appellant had used marijuana and methamphetamine prior to the incident and that a blood sample taken from Appellant on the day of the incident revealed the presence of cannabinoids and amphetamines.

[¶ 5] An answer to the complaint was filed on behalf of defendants R & R Roofing and Steve Rosty. Appellant, however, failed to plead or otherwise defend against the allegations in the complaint. As a result, default was entered against Appellant by the clerk of court. After default was entered, the non-defaulting parties were dismissed from the suit without prejudice. On March 23, 2010, the Skajs filed a motion for judgment on the default, and the district court set a hearing on the motion for September 24, 2010. On the day prior to the hearing, counsel retained by Cornhusker Casualty Company entered an appearance on behalf of Appellant and submitted a motion in opposition to the entry of default judgment. Although counsel noted that he had "not yet been able to make contact with [Appellant]," he asserted that, upon information and belief, service of process "may have been insufficient" because service may not have been effected at Appellant's usual place of abode under W.R.C.P. 4(d)(1). Counsel also moved to set aside the entry of default and requested an extension of time to answer the complaint.

[¶ 6] At the default judgment hearing held the following day, the district court denied Appellant's request for a continuance. The court noted that "[T]he entry of appearance and filing yesterday is very last minute. This hearing has been set since June 9, 2010. There's been no showing whatsoever of why representatives of Vincent Rosty could not have pursued the requests that they're now making at an earlier date." The court did not rule on Appellant's motion to set aside the entry of default because the Skajs had not had an opportunity to respond to the motion, and the matter had not yet been scheduled for a hearing. The court noted, however, that "Defendant Rosty should have an opportunity to schedule that up and pursue it if there's a request to do so."

[¶ 7] The court then proceeded to address the matter of the default judgment. The court received testimony from Shari and Steve Skaj relating to damages resulting from the incident, and heard arguments from counsel for both parties. At the conclusion of the hearing, the district court determined that default judgment was appropriate. The court found that the allegations in the complaint, which were deemed admitted upon entry of default, and the testimony presented at the hearing, indicated that Appellant was negligent. Based on the Skajs' testimony and the affidavits of various healthcare providers, the court found that Ms. Skaj was entitled to compensatory damages totaling $731,053.25, including medical expenses, past and future pain and suffering, past and future loss of enjoyment of life, past and future disability, and property damage. The court awarded $80,000 to Mr. Skaj for loss of consortium, but denied Mr. Skaj's claim for damages arising from negligent infliction of emotional distress. The court also assessed $75,000.00 in punitive damages against Appellant. A Default Judgment Order was entered on October 11, 2010.

[¶ 8] Appellant filed a notice of appeal from the Default Judgment Order on November 8, 2010, and that appeal was docketed in this Court as No. S–11–0063. Also on November 8, Appellant filed a "Motion to Set Aside Entry of Default or for Relief from Default Judgment" pursuant to W.R.C.P. 55(c), claiming that he was not properly served with the complaint, and did not receive sufficient notice of the default judgment hearing. The district court held a hearing on the motion on December 16, 2010.

[¶ 9] On March 14, 2011, the Skajs filed a "Notice of Denial by Operation of Law," asserting that the district court had not issued a ruling on Appellant's post-judgment motion within the ninety-day period established by W.R.C.P. 6(c)(2), and that, as a result, the motion was deemed denied. Two days later, Appellant renewed his motion to set aside the default judgment. On the same day, the court issued an "Order Denying Defendant Vincent Rosty's Motion to Set Aside Entry of Default or for Relief from Default Judgment." On April 14, 2011, Ap-

pellant filed a notice of appeal from the district court's denial of his motion to set aside entry of default and default judgment. That appeal was docketed in this Court as No. S–11–0136.

[¶ 10] The Skajs moved to dismiss case number S–11–0136, claiming that this Court is without jurisdiction to consider the appeal because it was not filed within thirty days after Appellant's motion was deemed denied. We denied the motion to dismiss without prejudice and instructed the parties to present additional briefing on the jurisdictional issue. In conjunction with the order denying the motion to dismiss, we consolidated the appeals.

## DISCUSSION

### Timeliness of Appeal

■ [¶ 11] As a threshold matter, we must first determine whether Appellant timely appealed the order denying his motion to set aside entry of default and default judgment. After careful review of the additional arguments and authority presented, we find that the appeal was timely filed.

[¶ 12] The Skajs contend that Appellant's motion was denied ninety days after it was filed under operation of the "deemed denied"

provision of W.R.C.P. 6(c)(2). That rule provides, in relevant part, as follows:

Any motion, under Rules 50(b) and (c)(2), 52(b), 59 and 60(b), not determined within 90 days after filing shall be deemed denied unless, within that period, the determination is continued by order of the court, which continuation may not exceed 60 days, at which time, if the motion has not been determined, it shall be deemed denied.

The Skajs begin from the proposition that Appellant's motion to set aside was filed pursuant to W.R.C.P. 60(b), bringing the motion within the reach of the deemed denied rule set forth in W.R.C.P. 6(c)(2). Accordingly, due to operation of the deemed denied rule, they claim that the motion was deemed denied on February 7, 2011, and that Appellant had thirty days from that date to file an appeal pursuant to W.R.A.P. 2.01.

[¶ 13] Appellant contends that a motion to set aside default judgment is not subject to the deemed denied rule because default judgments are governed by Rule 55,[1] which is not identified in Rule 6(c)(2). He points out that his motion was filed pursuant to Rule 55(c), and that the district court's order denying his motion also cites Rule 55(c). He claims that, because motions filed under Rule 55(c) are not subject to the deemed denied

---

1. W.R.C.P. 55 provides, in relevant part, as follows:

   **Rule 55. Default.**

   (a) *Entry.*—When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

   (b) *Judgment.*—Judgment by default may be entered as follows:

   (1) By the Clerk.—When the plaintiff's claim against a defendant is for a sum certain, or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not a minor or an incompetent person;

   (2) By the Court.—In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against a minor or an incompetent person unless represented

   in the action by a guardian, guardian ad litem, trustee, conservator, or other such representative who has appeared therein. If the party against whom a judgment by default is sought has appeared in the action the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least three days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute.

   (c) *Setting aside default.*—For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

   . . .

rule, the thirty-day period for filing an appeal commenced when the district court entered its order denying his motion on March 16, 2011.

[¶ 14] The issue we must resolve is essentially a dispute over the operation of the provision in Rule 55(c) which states that a default judgment may be set aside "in accordance with Rule 60(b)." The Skajs suggest that this provision indicates that a motion to set aside default judgment is identical to a motion for relief from judgment filed pursuant to Rule 60(b), and that all such motions are subject to the deemed denied provision of Rule 6(c)(2). Appellant contends that a motion to set aside default judgment is distinct from a Rule 60(b) motion for relief from judgment, and that the reference to Rule 60(b) merely instructs that a motion to set aside default judgment may be granted for the same reasons set forth in Rule 60(b).

[¶ 15] We find both parties' interpretations of Rule 55(c) to be plausible. However, in light of the fact that Rule 55(c) is omitted from the list of rules and corresponding motions that are subject to the deemed denied provision of Rule 6(c)(2), we find no clear indication that a motion to set aside default judgment is subject to the deemed denied rule. Further, we note that because motions to set aside default or default judgment do not affect the finality of a judgment or toll the time for filing an appeal under W.R.A.P. 2.02, the prevailing justification for application of the deemed denied rule does not exist. Accordingly, we find that the motion to set aside entry of default and default judgment was not deemed denied upon expiration of ninety days from the date of filing. The appeal, filed within thirty days of the district court's order denying Appellant's motion, was timely.

### Due Process

[¶ 16] In Appellant's second and third issues, he claims that the district court violated his rights to due process by failing to provide time for adequate notice of the default judgment hearing, and by depriving him of a meaningful opportunity to be heard at the hearing. Appellant asserts that, as a result of these due process violations, the default judgment is void. Whether a trial court violated a litigant's right to due process presents a question of law that we review *de novo*. *Kelly v. Kilts*, 2010 WY 151, ¶ 9, 243 P.3d 947, 950 (Wyo.2010).

[¶ 17] Appellant first contends that his right to due process was violated because the district court failed to comply with the notice requirement set forth in W.R.C.P. 55(b)(2). That rule provides, in relevant part, that "If the party against whom a judgment by default is sought has appeared in the action the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least three days prior to the hearing on such application." Appellant claims that "Under the express terms of Rule 55(b)(2), [the Skajs] were required to provide service of notice of their application for default judgment three days prior to the hearing once Mr. Rosty had entered his appearance." We disagree with Appellant's interpretation of the rule.

[¶ 18] Appellant's claim is that, under Rule 55(b)(2), a default judgment hearing may not be held without three-day notice to the defaulting party, regardless of when the party enters an appearance, provided that the appearance is entered prior to the scheduled hearing. The logical extension of Appellant's interpretation of the rule, however, is that a trial court cannot set a default judgment hearing, and confidently expect to hold the hearing on the scheduled date, under circumstances where the defaulting party has not yet entered an appearance. We do not think the rule mandates such a result. Rule 55(b)(2) does not require the default hearing to be moved, causing further delay to the complainant, as the result of a last-minute entry of appearance by the defaulting party. Rather, in using the phrase "has appeared in the action," the rule contemplates that the defaulting party will have entered an appearance at least three days prior to the hearing. As we have previously noted, "[A] workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts'

rules of procedure. The threat of judgment by default serves as an incentive to meet this standard." *Vanasse v. Ramsay,* 847 P.2d 993, 1000 (Wyo.1993). In accordance with this standard of diligence, and the plain language of the rule, we find that the three-day notice requirement in Rule 55(b)(2) applies when the defaulting party enters an appearance in sufficient time to allow for that possibility.

■ [¶ 19] Further, we are not persuaded that Appellant's representatives did not have actual notice of the proceedings in this case. The record indicates that Cornhusker Casualty Company, which ultimately retained counsel to defend Appellant on September 23, 2010, had knowledge of the proceedings from the beginning of this case. On October 30, 2008, a senior claims examiner at Cornhusker Casualty sent a letter to Appellant referencing the insurance claim arising from the incident involving Ms. Skaj. The letter stated that

> [W]e wish to advise you of your right to retain personal counsel, at your own expense, as pertains to your potential excess exposure. We are not advising that you must retain personal counsel, as Cornhusker Casualty Company will continue to provide a defense, but merely to advise you of your right to do so.

Additionally, the record reveals that on April 17, 2009, the day after the complaint was filed, counsel for the Skajs sent a courtesy copy of the complaint to an attorney retained by Cornhusker Casualty to defend the suit. A letter from the Skajs' counsel accompanying the complaint indicated that R & R Roofing, Steve Rosty, and Appellant would be served:

> The Cornhusker Casualty claims representative indicated that you would be representing R & R Roofing. I am not sure how the co-defendants will be represented so I am having all the Defendants served.

On April 29, 2009, counsel for the Skajs received a response from the defense attorney, indicating that she had requested an extension to file an answer on behalf of Appellant:

> Thank you for agreeing to extend the answer deadline for all defendants in the above-captioned case to May 18, 2009. As I explained, at this point I do not know if I will be representing all of the defendants. In addition, I requested that you consider dismissing Steve Rosty as a defendant as it is my understanding he was not involved in any way in the accident.

Defense counsel subsequently filed an answer to the Skajs' complaint on behalf of R & R Roofing and Steve Rosty, but did not answer on behalf of Appellant. In light of this correspondence, it is clear that Cornhusker Casualty was aware that Appellant was facing an impending lawsuit, and had actual knowledge of the suit immediately after it was initiated. Yet Cornhusker Casualty waited until September 23, 2010, sixteen months after default was entered against Appellant, and one day prior to the default judgment hearing, to retain counsel to defend him. Under these circumstances, we find that Appellant had ample notice, through his representatives, of the default judgment hearing.

[¶ 20] Appellant's claim that he did not have a meaningful opportunity to be heard at the default judgment hearing is based entirely on the assertion that he did not receive adequate notice of the hearing. He contends that he "was not given sufficient time to meaningfully participate in the hearing," and acknowledges that this claim is "closely related" to the failure of adequate notice. Appellant, however, does not present any additional support for the claim that he was deprived of his right to due process separate from his assertion of inadequate notice. Consequently, for the same reasons discussed immediately above, we reject Appellant's claim that he was deprived of a meaningful opportunity to be heard at the hearing. We also note that Appellant's counsel was present at the hearing and took full advantage of the opportunity to cross-examine witnesses, object to witness testimony and exhibits, and present argument to the court. *See Adel v. Parkhurst,* 681 P.2d 886, 891 (Wyo.1984) ("[S]ince [appellant] did appear by counsel at and participate in the [default judgment] hearing no prejudice could be asserted."). We find no violation of Appellant's due process rights.

*Service of Process*

[¶ 21]  We turn next to Appellant's claim that he was not properly served with the summons and complaint, and that the default judgment entered against him is void as a result of the fact that the district court lacked personal jurisdiction.  On appeal, Appellant does not dispute the fact that the summons and complaint were delivered to his mother at his usual place of abode.  Rather, he contends that his mother was not competent to accept service on his behalf because she was suffering from Alzheimer's disease at the time of service.  We conclude, however, that Appellant has not satisfied his burden of proving that his mother was incompetent and, as a result, we reject Appellant's claim that service of process was insufficient.

[¶ 22]  As we have previously recognized, a court does not acquire personal jurisdiction over a party that has not been properly served:

A summons is "the means of compelling a defendant to subject his person to the jurisdiction of the court from which the summons issues."  Strict compliance with the requirements of service of process is mandatory.  Any omissions of statements that are required under W.R.C.P. 4 are fatal and such omission prevents the trial court from obtaining jurisdiction of the defendant.  A judgment entered without proper service of the summons is void and subject to attack directly or collaterally.

*Hoke v. Motel 6 Jackson & Accor N. Am., Inc.,* 2006 WY 38, ¶ 7, 131 P.3d 369, 374 (Wyo.2006) (citations omitted).  We review factual determinations relating to service of process by accepting the evidence of the prevailing party as true and giving that party the benefit of all favorable inferences that can fairly be drawn from the evidence while disregarding conflicting evidence.  *Crotteau v. Irvine,* 656 P.2d 1166, 1169 (Wyo.1983).  Where the facts of service are not in dispute, the issue of adequate service of process is a matter of law and is reviewed *de novo.  See Hoke,* ¶ 6, 131 P.3d at 373.

[¶ 23]  W.R.C.P. 4(d)(1), which governs personal service of a summons and complaint, allows for substituted service at the defendant's usual place of abode.  The rule provides, in relevant part, that service of a summons and complaint "shall be made as follows":

(1) Upon an individual other than a person under 14 years of age or an incompetent person, by delivering a copy of the summons and of the complaint to the individual personally, *or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person over the age of 14 years then residing therein* [.]

(Emphasis added.)  In Appellant's motion in opposition to the entry of default and default judgment, filed on the day prior to the default judgment hearing, his counsel claimed that service "may have been insufficient" because his mother's residence "may not have been" his usual place of abode:

[T]he attempted service of process upon Vincent Rosty, detailed in the Affidavit of Scott J. Olheiser, filed May 21, 2009, may have been insufficient, improper and inadequate service as, upon information and belief, Ms. Jackie Fran[z]en's residence at 1310 Granite in Mills, Wyoming may not have been Mr. Rosty's "dwelling house or usual place of abode" under W.R.C.P. 4(d)(1), and accordingly the attempted personal service may have been inadequate.

At the default judgment hearing, Appellant's counsel, who had not yet been able to contact Appellant, stated that "we don't know whether [Mr. Rosty] was served properly or not," and requested a continuance so that he could "attempt to determine the circumstances of service."  As indicated above, the district court denied the request for a continuance, noting that "There's been no showing whatsoever of why representatives of Vincent Rosty could not have pursued the requests that they're now making at an earlier date."

[¶ 24]  After issuance of the default judgment, and after Appellant had an opportunity to consult with his attorney, he conceded, in his motion to set aside the default judgment, that he was living at his mother's home at the time of the accident.  He claimed, however, that service was improper because his mother was not competent to accept service on his behalf.  Appellant submitted an affidavit stating that his mother had been diag-

nosed with Alzheimer's disease and that she "was suffering increased symptoms of forgetfulness and memory problems" at the time of service. Appellant's sister also submitted an affidavit stating that her mother's memory "appears to be substantially impaired." Her affidavit further stated as follows:

10. In April of 2009 my mother called me and told me that someone had delivered papers to her. She didn't know what they were for but thought they might be for Vince.

11. Because I was concerned about her wellbeing, I told her she should not worry about the papers and should not get involved in anything having to do with the papers.

The district court ultimately found, in its order denying the motion to set aside the default judgment, that "The return of service reflecting the service of the Summons and Complaint in this action upon Defendant Vincent Rosty establishes facts supporting proper service pursuant to Rule 4(d)(1) of the Wyoming Rules of Civil Procedure, and [Mr. Rosty] has failed to rebut the proof of the service made upon him at his residence and usual place of abode."

[¶ 25] The Skajs assert that nothing in Rule 4(d)(1) prohibits substituted service upon an incompetent person at the defendant's usual place of abode. Although we note that this scenario raises due process concerns, we need not address the issue in this appeal because we find that the burden was on Appellant to demonstrate that his mother was incompetent, and that he failed to satisfy that burden. In *Crotteau*, 656 P.2d at 1169, a case in which the defendant claimed that substituted service of process was not effected at her "usual place of abode," we held that "the party asserting the validity of the service bears the burden of proof, and that no presumption attaches, in the case of substituted service, to shift the burden." This case, however, is distinguishable from *Crotteau*. In contrast to *Crotteau*, Appellant contends that substituted service was invalid because his mother was incompetent. Under these circumstances, where a party asserts that substituted service is invalid due to acceptance of service by an incompetent person, we find that the burden is on the party asserting that service was invalid to prove incompetence. This is consistent with the approach followed in federal courts and in most states, as recognized in *Crotteau*, 656 P.2d at 1168:

[T]he burden of proof to establish the validity of the service is on the party on whose behalf the service is accomplished. See 4 Wright and Miller, Federal Practice and Procedure, § 1083, p. 384 (1969), and cases cited therein. Normally, however, the process server's return will provide a prima facie case as to the facts of service, and the burden shifts to the defendant to rebut the proof. *San Rafael Compania Naviera, S.A. v. American Smelting & Refining Company*, 327 F.2d 581 (9th Cir. 1964). The defendant has to overcome the proof by strong and convincing evidence. *Hicklin v. Edwards*, 226 F.2d 410 (8th Cir.1955).

[¶ 26] The return affidavit of service filed with the district court stated that, on April 17, 2009, copies of the summons and complaint were delivered to "Vincent Rosty—by serving copies to Jackie Franzen—mother of Vincent—a person over the age of 14 years at 1310 Granite, Mills, WY 82644—their usual place of abode." The return of service, which recited facts sufficient to meet the requirements of W.R.C.P. 4(d)(1), established a presumption that service was proper under the rule. The affidavits offered by Appellant, suggesting that his mother had accepted service on his behalf and had informed Appellant's sister that she thought the documents were for Appellant, failed to rebut this presumption by "strong and convincing evidence." Accordingly, we hold that service of process was properly effected pursuant to W.R.C.P. 4(d)(1).

### Denial of Motion to Set Aside Default and Default Judgment

[¶ 27] In his fifth issue, Appellant claims that the district court erred in denying his motion to set aside entry of default and default judgment. We apply the same standard of review to the denial of a motion to set aside entry of default as to the denial of a motion to set aside default judgment: "Decisions resolving motions for set-

ting aside the entry of default or a default judgment are made in the exercise of sound discretion by the trial court." *Fluor Daniel, Inc. v. Seward,* 956 P.2d 1131, 1134 (Wyo. 1998).

> Rules 55(c) and 60(b), W.R.C.P., are remedial and are intended to promote decisions on the merits when possible. A trial court has wide judicial discretion to grant or deny a defendant's motion under these rules. We will not disturb the exercise of that discretion unless appellant demonstrates that the trial court abused it and was clearly wrong.

*Nowotny v. L & B Contract Indus.,* 933 P.2d 452, 460 (Wyo.1997) (quoting *Claassen v. Nord,* 756 P.2d 189, 193 (Wyo.1988)) (internal citations omitted). The proponent of a motion to set aside default judgment has the burden of proving that he is entitled to relief. *Lykins v. Habitat for Humanity, The Heart of Wyo., Inc.,* 2010 WY 118, ¶ 10, 237 P.3d 405, 408 (Wyo.2010).

[¶ 28] As noted above, W.R.C.P. 55(c) provides that "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Rule 60(b), in turn, provides in pertinent part as follows:

### Rule 60. Relief from judgment or order.

. . .

(b) *Other reasons.*—On motion, and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other

reason justifying relief from the operation of the judgment.

As we have previously noted, the factors described in Rule 60(b) are relevant to our determination of whether the defendant has shown "good cause." *Vanasse,* 847 P.2d at 999. If the defendant "cannot substantiate reasons under Rule 60(b) for setting aside the default judgment, then 'good cause' also does not exist to set aside the entry of default under Rule 55(c)." *Id.; see also M & A Constr. Corp. v. Akzo Nobel Coatings,* 936 P.2d 451, 454–55 (Wyo.1997).

[¶ 29] We have acknowledged two competing policy considerations that guide a decision to set aside a default judgment: "The justice system and litigants have an interest in the finality of judgment and efficiency in litigation. However, this court has long recognized that 'default judgments are not favored in the law' and 'it is preferable that cases be tried on their merits.'" *Vanasse,* 847 P.2d at 997 (quoting *Carlson v. Carlson,* 836 P.2d 297, 301 (Wyo.1992)). Although a decision on the merits is preferred, "given a proper case, we will recognize the propriety of a default judgment." *Vanasse,* 847 P.2d at 997.

[¶ 30] In his motion to set aside default and default judgment, Appellant claimed that he was entitled to relief from the default judgment because "the complaint and summons were not properly served and cannot form the basis of a valid judgment." He asserted that "the facts regarding the complete lack of service on Mr. Rosty fulfill the requirements of Rules 60(b)(1), 60(b)(2), 60(b)(4), and 60(b)(6)." The district court, however, found that service had been properly effected pursuant to W.R.C.P. 4(d)(1), and concluded that Appellant had not established grounds for relief from the default judgment.

[¶ 31] On appeal, Appellant again relies on the assertion that he was not properly served with the summons and complaint in claiming that the district court's denial of his motion to set aside default and default judgment was an abuse of discretion. He emphasizes that there has been no demonstration that he was "in any way culpable in the failure of the [Skajs] to ensure good service

upon him." However, as discussed above, Appellant failed to carry his burden of proving that service of process was inadequate. Consequently, as the district court properly concluded, any claim for relief founded on the proposition that Appellant was not properly served is simply unavailing. *See Lykins,* ¶ 13, 237 P.3d at 409 (finding no abuse of discretion where district court denied motion to set aside default judgment because defendants "failed to prove that they were not properly served, and did not demonstrate any other reason justifying relief"). Appellant has presented no argument that the district court abused its discretion in denying his motion aside from his claim of insufficient service of process. In light of our conclusion that service of process was valid, we find no abuse of discretion in the district court's decision denying Appellant's request for relief.

### Punitive Damages

[¶ 32] In Appellant's final issue, he challenges the district court's award of punitive damages. The district court assessed $75,000 in punitive damages based on the following findings:

[T]he punitive damage allegations and claim is defaulted also. Also, it does appear that with the driver, Mr. Vincent Rosty, having been under the influence of cannabinoids and I believe it was methamphetamine and his, basically, desertion of Ms. Skaj after she was injured, that some component of punitive damages is appropriate for his willful and wanton misconduct.

Although the facts as alleged in the complaint and the testimony of Ms. Skaj at the default hearing raise questions as to the factual basis of Appellant's "willful and wanton misconduct," Appellant does not dispute the district court's findings. Rather, he contends that the district court erred in failing to give proper consideration to his wealth or financial condition prior to assessing punitive damages. He claims that because the Skajs did not present sufficient evidence on which the district court could have made a determination of his wealth or financial condition, the award of punitive damages must be reversed.

The Skajs respond that they satisfied their evidentiary burden.

[¶ 33] The decision to award punitive damages is within the district court's discretion, and we will not reverse the decision on appeal without finding a clear abuse of that discretion. *Alexander v. Meduna,* 2002 WY 83, ¶ 41, 47 P.3d 206, 219 (Wyo. 2002). In reviewing for an abuse of discretion, we consider whether there was sufficient evidence to support the district court's conclusion:

A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained.

*Vargas Ltd. P'ship v. Four "H" Ranches Architectural Control Comm.,* 2009 WY 26, ¶ 10, 202 P.3d 1045, 1050 (Wyo.2009) (quoting *Witowski v. Roosevelt,* 2009 WY 5, ¶ 13, 199 P.3d 1072, 1076 (Wyo.2009)).

[¶ 34] As we noted in *Alexander,* ¶ 40, 47 P.3d at 218, punitive damages are not favored and are to be awarded "only for conduct involving some element of outrage," such as willful or wanton misconduct. Punitive damages are "an implement of public policy" and are intended to punish the defendant with the purpose of deterring others from similar conduct in the future. *Id; see also Adel,* 681 P.2d at 890. Consistent with the purposes of punishment and deterrence, we have looked to multiple factors in determining whether an award of punitive damages is appropriate, including the financial condition or wealth of the defendant, the degree of reprehensibility of the defendant's conduct, and the nature and extent of the injury caused by the defendant's conduct. *Alexander,* ¶ 42, 47 P.3d at 219. The burden of proof with respect to punitive damages is on the party seeking such damages. *Adel,* 681 P.2d at 892.

[¶ 35] In *Adel*, 681 P.2d at 892, a case in which we affirmed the entry of default judgment, we held that "in the absence of evidence of a defendant's wealth or financial condition an award of punitive damages cannot be sustained." We stated that evidence relating to the wealth or financial condition of the defendant constitutes "foundational proof" supporting an award of punitive damages and noted that a defendant in default does not concede the amount demanded for punitive damages. *Id.* Based on the facts in *Adel*, where no evidence was presented on the financial condition or the wealth of the defendant, we held that the award of punitive damages was inappropriate. *Id.*

[¶ 36] Both before and after our decision in *Adel*, we have not hesitated to reverse an award of punitive damages in cases where there has been inadequate evidence of a defendant's wealth or financial condition. For example, in *Sears v. Summit, Inc.*, 616 P.2d 765, 773 (Wyo.1980), we reversed an award of punitive damages where the only evidence of the defendant's wealth was that "appellant's ranch extended for at least six miles along the private road; appellant stated that it would take at least six days to separate the cows from the yearlings after appellee's crew allegedly left the gates open; and appellant owns road-construction equipment which he rents for $50.00 an hour." From this evidence, we concluded that "there was no evidence present from which the jury could have considered appellant's wealth." *Id.*; *see also Ruwart v. Wagner*, 880 P.2d 586, 593 (Wyo.1994); *United States ex rel. Farmers Home Admin. v. Redland*, 695 P.2d 1031, 1040 (Wyo.1985); *Scott v. Fagan*, 684 P.2d 805, 811 (Wyo.1984).

[¶ 37] In the present case, we find that the Skajs failed to produce sufficient evidence of Appellant's wealth or financial condition to support an award of punitive damages. The only evidence produced by the Skajs consisted of deposition testimony indicating that Appellant had worked at R &

R Roofing for approximately seven years, from April, 2001 to May, 2008, and a paystub from one day of Appellant's employment at R & R Roofing, showing that he earned $16.50 per hour. In evaluating this evidence in the context of the Skajs' request for punitive damages, the district court, noting the requirements of Wyoming Civil Pattern Jury Instruction 4.06(A), which requires consideration of the "financial condition of the defendant," stated as follows:

> The other matter that I mentioned is the punitive damage claim. And as was noted in the Plaintiffs' memorandum, the Wyoming pattern jury instructions do provide guidelines. I believe they set forth seven or so factors that may be included in an award of punitive damages. And I've tried to take a look at that. There [are] some areas where I'm not that sure. For example, I don't think there was any profit made by Mr. Vincent Rosty that would come into play. *His financial position is somewhat nebulous. Obviously, he was a wage earner. I struggled a little bit with what his financial position would have been at or near the time of the event.* I'm not real sure about the criminal sanctions that were imposed.

> But taking a look at all of those factors and considering them, I think some component of punitive damage is appropriate. . . .

(Emphasis added.) The fact that Appellant was a wage-earner at the time of his tortious conduct does not constitute evidence of his wealth. Although Appellant's term of employment with R & R Roofing and a paystub may provide some indication of his income during the time of his employment, that evidence does not provide a sufficient indication of Appellant's wealth or financial condition to support an award of punitive damages. The Skajs presented no evidence of Appellant's assets or net worth. Further, the Skajs presented no evidence of Appellant's financial condition at the time the judgment was entered.[2] Because the district court was pre-

---

2. Although this Court has not addressed the issue, other jurisdictions have held that a defendant's wealth is appropriately measured "at the time of entry of the judgment, in recognition that that is the time that the wrongdoer must feel the

sting of an appropriately sized punitive damage penalty." *Tarr v. Bob Ciasulli's Mack Auto Mall, Inc.*, 194 N.J. 212, 219–20, 943 A.2d 866, 871 (N.J.2008); *see also Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 941 (D.C.1995) ("[S]ince

sented with insufficient evidence of Appellant's wealth or financial condition, we find that the district court abused its discretion in awarding punitive damages and reverse that part of the district court's order.

[¶ 38] The district court's denial of Appellant's motion to set aside default and default judgment is affirmed. We reverse that part of the district court's order awarding punitive damages and remand for further proceedings consistent with this opinion.

current net worth fairly depicts a tortfeasor's ability to pay punitive damages, the plaintiffs here were required to present sufficient proof of current net worth to support the punitive damages awarded by the jury."); *Hayes Oyster Co. v. Dulcich,* 199 Or.App. 43, 57, 110 P.3d 615, 624 (Or.Ct.App.2005) ("What 'would constitute a

penalty in relation to a defendant's wealth' is properly measured at the time the penalty is assessed, not at the time the tortious action occurred."); *Rufo v. Simpson,* 86 Cal.App.4th 573, 621, 103 Cal.Rptr.2d 492 (Cal.App. 2d Dist.2001) (compiling cases).