# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 43

**OCTOBER TERM, A.D. 2014**

**March 24, 2015**

| | |
|---|---|
| MARY L. WISE,<br><br>Appellant<br>(Plaintiff),<br><br>v.<br><br>STEVEN F. LUDLOW,<br><br>Appellee<br>(Defendant). | S-14-0147 |
| STEVEN F. LUDLOW,<br><br>Appellant<br>(Defendant),<br><br>v.<br><br>MARY L. WISE,<br><br>Appellee<br>(Plaintiff). | S-14-0148 |

*Appeal from the District Court of Natrona County*
*The Honorable Daniel L. Forgey, Judge*

*Representing Appellant, Mary L. Wise, S-14-0147:*
    Stephen R. Winship, Winship & Winship, P.C., Casper, Wyoming.

*Representing Appellee, Steven F. Ludlow, S-14-0147 :*
    Sean W. Scoggin, McKellar, Tiedeken & Scoggin, LLC, Cheyenne, Wyoming.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]    Mary L. Wise appeals from a judgment following a jury verdict in a personal injury trial arising from a single car collision in which she was the passenger and Steven F. Ludlow was the driver.  She contends the district court made erroneous decisions relating to comparative fault and to the admission and exclusion of certain evidence.  Mr. Ludlow filed a cross-appeal, asserting that the district court incorrectly ruled that he had been properly served with the Summons and Complaint.  We will affirm the district court in both Ms. Wise's appeal and Mr. Ludlow's cross-appeal.

### *ISSUES*

[¶2]    Ms. Wise lists a number of issues in her appeal.  We reword and reorganize them as follows:

> 1.    Did the district court err by instructing the jury on comparative fault?
>
> 2.    Did the district court err in excluding evidence of Ms. Wise's lack of financial resources to explain delays in seeking treatment for her injuries?
>
> 3.    Did the district court err by admitting the testimony of Mr. Ludlow's expert witness?
>
> 4.    Did the district court err in denying Ms. Wise's attempt to impeach Mr. Ludlow's testimony with Mr. Ludlow's Answer to the Complaint?

[¶3]    Mr. Ludlow raises a single issue:

> 1.    Did the district court err in determining it had personal jurisdiction over Mr. Ludlow?

### *FACTS*

[¶4]    The accident at issue occurred in Casper, Wyoming, on Sunday, October 28, 2007.  On that date, Mr. Ludlow consumed a significant amount of alcohol.  He began drinking at his home around 9:00 a.m.  He went to the Sandbar Lounge at 11:00 a.m. where he drank beers and shots of whiskey, and later rum and coke drinks.  Ms. Wise arrived at the Sandbar early that afternoon, coming from a different bar where she had lunch and a couple of beers, followed by some vodka drinks.  Mr. Ludlow and Ms. Wise had known each other for about two years, and had dated on occasion.  They talked for a while at the

1

Sandbar, and she asked for a ride in his Corvette. They left at about 5:00 p.m.

[¶5] After driving a short distance, Mr. Ludlow lost control of the car while driving 40 to 50 miles per hour in a 30 mile per hour zone. The vehicle struck a fence and a concrete stairway and was totaled. Mr. Ludlow admitted to the investigating officer that he was too drunk to drive and, approximately two hours after the accident, his blood alcohol level was measured at 0.14%. He later pled guilty to a charge of driving while under the influence of alcohol.

[¶6] Mr. Ludlow and Ms. Wise were taken to the hospital, examined, and discharged. Ms. Wise was diagnosed with a chest contusion, bruises, and abrasions. She followed up with her regular doctor with concerns about various pains and soreness. Approximately six months after the accident, she began experiencing pain in her back, neck, and legs, and eventually was diagnosed with abnormalities in the discs of her cervical and lumbar spine.

[¶7] Ms. Wise filed suit on October 19, 2011. Mr. Ludlow was living in New Jersey at the time. Ms. Wise attempted to serve process on him at the New Jersey address listed on his driver's license. The affidavit of service indicates that the Summons and Complaint were served at that address on "Christine Ludlow (Mother)."

[¶8] Mr. Ludlow responded with a motion to dismiss pursuant to W.R.C.P. 12(b)(5), claiming insufficiency of service of process. The district court denied the motion. Mr. Ludlow then filed his Answer, preserving his claim of improper service as an affirmative defense. In a subsequent scheduling order, the district court set a deadline for Mr. Ludlow to file "a motion regarding the issues of service and jurisdiction." Mr. Ludlow filed the motion on the deadline, styling it as a motion for summary judgment. The district court denied the motion, ruling that the Summons and Complaint had been properly served.

[¶9] A four day trial began on February 3, 2014. The jury returned a verdict finding Mr. Ludlow negligent, that his negligence was a cause of Ms. Wise's injuries or damages, and that he was 55% at fault. The jury also found that Ms. Wise was 45% at fault. The jury found her total damages to be $15,000. Ms. Wise's damages were reduced by her percentage of fault, and the district court entered a judgment of $8,250 in her favor. She filed this appeal. Mr. Ludlow responded with his cross-appeal.

## DISCUSSION

[¶10] "Proper service of process is necessary to acquire personal jurisdiction over a defendant under the due process provisions of both the federal and state constitutions." *Lundahl v. Gregg*, 2014 WY 110, ¶ 7, 334 P.3d 558, 561 (Wyo. 2014) (citing *Gookin v. State Farm Fire and Casualty Ins. Co.*, 826 P.2d 229, 232 (Wyo. 1992)). Due to the

jurisdictional nature of service of process, Mr. Ludlow's issue is potentially dispositive. We will address it first.

[¶11] W.R.C.P. 4(d)(1) provides that service can be made "by delivering a copy of the summons and of the complaint to the individual personally, or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person over the age of 14 years then residing therein." The affidavit of service indicates that process was served at an address on Ravine Road in Verona, New Jersey. In his motion to dismiss, Mr. Ludlow claimed that this address was not his "dwelling house or usual place of abode." To support the motion, he presented the affidavit of his mother stating that the Ravine Road address was her residence, and that Mr. Ludlow did not reside there.

[¶12] In opposition to the motion, Ms. Wise presented the affidavit of Detective Brian Marczewski stating that when he took the Summons and Complaint to the designated address, "The person who answered the door was Christine Ludlow. I verified that she was over the age of 14 and that she resided at [the Ravine Road address]. . . . I then inquired if Steven Ludlow also resided in the home with her, which she answered by saying 'yes.'" The district court denied the motion explaining that the return of service provided a prima facie case as to the facts of service, and that Mr. Ludlow had not met his burden of countering that prima facie case.

[¶13] Mr. Ludlow subsequently raised the issue again, this time in a motion for summary judgment. In addition to the affidavit of his mother presented with his earlier motion to dismiss, Mr. Ludlow included an excerpt from the transcript of his mother's deposition, in which she stated that Mr. Ludlow had lived at her home for two months during 2009, but had moved to another address by the time process was served. She also testified that, when the detective came to her home and asked if Mr. Ludlow lived there, she "responded by saying no." He also added his affidavit stating that at the time of service, he was not living at Ravine Road, but rather at an address on Grove Avenue in Verona, New Jersey. He attached several tax forms listing the Grove Avenue address.

[¶14] Ms. Wise opposed the motion. She again relied on the affidavit of the detective who had left the Summons and Complaint with Mr. Ludlow's mother. She also attached an excerpt from Mr. Ludlow's deposition in which he stated that his driver's license still listed the Ravine Road address, and that he stored a tool box at his mother's home. Ms. Wise also pointed to portions of the deposition of Mr. Ludlow's mother in which she stated that Mr. Ludlow sometimes received advertisements in the mail at her address.

[¶15] The district court denied Mr. Ludlow's motion for summary judgment. Summary judgment is granted only when there are no genuine issues of material fact. *Jacobs Ranch Coal Co. v. Thunder Basin Coal Co., LLC*, 2008 WY 101, ¶ 8, 191 P.3d 125, 128 (Wyo. 2008). Because there was conflicting evidence on the question of Mr. Ludlow's usual place of abode, summary judgment was precluded. However, in the usual course of

3

events, the denial of a motion for summary judgment results in a determination of the issue at trial. That did not happen in this case. In denying Mr. Ludlow's motion for summary judgment, the district court decided the service of process issue and ruled in Ms. Wise's favor.

[¶16] A decision in Ms. Wise's favor would have been appropriate if the issue had come before the court on a motion to dismiss. W.R.C.P. 12(d) provides that defenses of lack of subject matter or personal jurisdiction, improper venue, insufficiency of process or service of process, failure to state a claim, and failure to join a party "shall be heard and determined before trial on application of any party, unless the court orders that the hearing and determination thereof be deferred until the trial." When a defendant files a motion contesting the court's personal jurisdiction, "[t]he court may consider any allegations set forth in the complaint and any evidence which may be introduced in a hearing on the issue." *Amoco Production Co. v. EM Nominee Partnership Co.*, 886 P.2d 265, 267 (Wyo. 1994) (citing *McAvoy v. District Court of Denver*, 757 P.2d 633, 634-35 (Colo. 1988)).

> Previously, we have ruled that federal authority interpreting FED.R.CIV.P. 12 is highly persuasive because of the virtual identity of the two rules. In the federal courts, the practice is to consider affidavits and any other relevant matter that may assist the court in determining jurisdictional facts when confronted with a motion to dismiss under Rule 12(b)(2). This practice is summarized in CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE CIVIL 2D § 1351, at 253 (1990):
>
> > When a court is considering a challenge to its jurisdiction over defendant or over a res, it may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts; * * *.
>
> In making its decision on the issue, the trial court has considerable leeway. It may determine the matter on the basis of pleadings and other materials called to its attention; it may require discovery; and it may even conduct an evidentiary hearing.

*PanAmerican Mineral Servs. v. KLS Enviro Resources, Inc.*, 916 P.2d 986, 989 (Wyo.

4

1996) (some citations omitted).[1]

[¶17]  In this case, the parties and the district court referred to Mr. Ludlow's motion as one for summary judgment.  What the district court actually did, however, was to make a pretrial decision, resolving the issue of service of process.  This was entirely consistent with our rules of procedure and our previous decisions relating to motions to dismiss. We will review the district court's decision as if made on a motion to dismiss.  As another court explained:

> The defense [of improper service of process], having been properly and reasonably raised, was ripe for an application to have it determined pursuant to Rule 12(d).  We should note that since the defense of improper service involves a matter in abatement and does not go to the merits of the action, the present application is improperly brought by a motion for summary judgment under Rule 56 F.R.Civ.Pro.  *See Moore's Federal Practice* (2d Ed.) Vol. 6, Sec. 56.03.  However, since this defense was timely raised in defendant's answer pursuant to Rule 12(b) and is properly before us, we shall deem defendants' Motion as an application for dismissal under Rule 12(d) F.R.Civ.Pro. and consider it now.

*United States v. Marple Community Record, Inc.*, 335 F. Supp. 95, 101 (E.D. Pa. 1971).

[¶18]  Treating Mr. Ludlow's motion as a motion to dismiss, we apply this standard of review:

> We review factual determinations relating to service of process by accepting the evidence of the prevailing party as true and giving that party the benefit of all favorable inferences that can fairly be drawn from the evidence while disregarding conflicting evidence.  *Rosty v. Skaj*, 2012 WY 28, ¶ 22, 272 P.3d 947, 955 (Wyo. 2012).  Where the facts of service are not in dispute, the issue of adequate service of process is a matter of law and is reviewed *de novo*.  *Id*.  We likewise review a district court's application of court rules *de*

---

[1] *PanAmerican* dealt with a motion to dismiss under Rule 12(b)(2), lack of personal jurisdiction. Mr. Ludlow's claim of insufficiency of service of process is a defense listed in W.R.C.P. 12(b)(5). Because the two defenses are closely related, *PanAmerican* also applies here.  As noted at the start of our discussion, proper service of process is necessary to acquire personal jurisdiction over a defendant. Rule 12(d) also indicates that these defenses are raised and considered in the same way.

*novo. Tafoya v. Tafoya*, 2013 WY 121, ¶ 7, 309 P.3d 1236,
1238 (Wyo. 2013).

*Lundahl*, ¶ 7, 334 P.3d at 561. Where the facts of service are in dispute, as they are here, we review the district court's factual findings under the clearly erroneous standard. *Blittersdorf v. Eikenberry*, 964 P.2d 413, 415 (Wyo. 1998). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Henry v. Borushko*, 2012 WY 104, ¶ 6, 281 P.3d 729, 731 (Wyo. 2012) (quoting *Springer v. Blue Cross & Blue Shield*, 944 P.2d 1173, 1176 (Wyo. 1997)).

[¶19] Before we address the district court's factual findings, however, we must first grapple with a legal issue involving the burden of proof, a question of law that we review *de novo*. In its decision letter, the district court explained the legal framework used in reaching its decision:

> The burden of proof to establish the validity of the service is on the party on whose behalf the service is accomplished; and the process server's return will provide a prima facie case as to the facts of service, and the burden shifts to the defendant to rebut the proof. *Rosty v Skaj*, 2012 WY 28, ¶ 25, 272 P.3d 947, 956 (Wyo. 2012); *Crotteau v. Irvine*, 656 P.2d 1166, 1168 (Wyo. 1983) . . . . The defendant has to overcome the proof by strong and convincing evidence. *Id*.

[¶20] In *Crotteau*, we reviewed how other jurisdictions have allocated burdens of proof applicable to motions to dismiss for insufficiency of service of process. We described the federal approach this way:

> Under the federal cases, the burden of proof to establish the validity of the service is on the party on whose behalf the service is accomplished. Normally, however, the process server's return will provide a prima facie case as to the facts of service, and the burden shifts to the defendant to rebut the proof. The defendant has to overcome the proof by strong and convincing evidence.

*Crotteau*, 656 P.2d at 1168 (citations omitted). We observed that we had not yet ruled on such presumptions and burdens, but noted that in *Bryant v. Wybro Federal Credit Union*, 544 P.2d 1010 (Wyo. 1976), we implicitly held that "the party asserting the validity of the service had the burden of proof, and that no presumption of validity attached to the sheriff's certificate." *Crotteau*, 656 P.2d at 1168. We then concluded "that the party

6

asserting the validity of the service bears the burden of proof, and that no presumption attaches, in the case of substituted service, to shift the burden." *Id.*, 656 P.2d at 1169.

[¶21] We took a different approach in *Rosty*, and explained why we were departing from the holding in *Crotteau*:

> [W]e find that the burden was on [Defendant] to demonstrate that his mother was incompetent, and that he failed to satisfy that burden. In *Crotteau*, 656 P.2d at 1169, a case in which the defendant claimed that substituted service of process was not effected at her "usual place of abode," we held that "the party asserting the validity of the service bears the burden of proof, and that no presumption attaches, in the case of substituted service, to shift the burden." This case, however, is distinguishable from *Crotteau*. In contrast to *Crotteau*, [Defendant] contends that substituted service was invalid because his mother was incompetent. Under these circumstances, where a party asserts that substituted service is invalid due to acceptance of service by an incompetent person, we find that the burden is on the party asserting that service was invalid to prove incompetence. This is consistent with the approach followed in federal courts and in most states, as recognized in *Crotteau*.

*Rosty*, ¶ 25, 272 P.3d at 956.

[¶22] Mr. Ludlow's case does not involve the competency question at issue in *Rosty*. His contention that process was not served at his usual place of abode is the same as in *Crotteau*. It would therefore seem that the district court in Mr. Ludlow's case should have followed *Crotteau* rather than *Rosty*. For several reasons, however, we conclude that the correct burdens and presumptions are those stated in *Rosty* and used by the district court in this case.

[¶23] *Crotteau* and *Rosty* are consistent in recognizing that the plaintiff bears the initial burden to establish that service of process was proper. In *Crotteau*, 656 P.2d at 1168, we noted that in most federal courts, "the process server's return will provide a prima facie case as to the facts of service." We declined to follow that precedent, however, and instead held that "no presumption attaches, in the case of substituted service, to shift the burden." *Id*. at 1169.

[¶24] Since that time, several federal courts have reconfirmed that the return of service provides a prima facie case of sufficient service of process. *E.g.*, *Udoinyion v. Guardian Sec.*, 440 Fed. Appx. 731, 735 (11th Cir. 2011); *SEC v. Internet Solutions for Bus., Inc.*,

7

509 F.3d 1161, 1163 (9th Cir. 2007); *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1390 (8th Cir. 1995). Many states also treat a return of service as establishing a prima facie case of proper service of process. *E.g., Warbington v. First Cmty. Bank*, 383 S.W.3d 384, 387 (Ark. 2011); *Pickett v. Sears, Roebuck & Co.*, 775 A.2d 1218, 1227 (Md. 2001); *Scanlan v. Townsend*, 336 P.3d 1155, 1159-60 (Wash. 2014).

[¶25] The rule that a return of service establishes a prima facie case has deep historical roots. At common law, the "verity rule" provided that a sheriff's return of process was conclusive proof of proper service and, absent a showing of fraud, could not be impeached by parol evidence. *Hoffman v. Quality Chrysler Plymouth Sales, Inc.*, 706 S.W.2d 576, 579 (Mo. Ct. App. 1986). The verity rule was superseded by legislation in Missouri, *id.*, and due to its strictness, has been relaxed in all but a handful of states. *See Vaughn v. Love*, 188 A. 299, 301 (Pa. 1936). But while the verity rule has been softened, its substance is still reflected in the presumption of truth in matters asserted in a return of service, *New Haven Bd. of Educ. v. Giordano Constr. Co.*, 2014 Conn. Super. LEXIS 1913, 7-9 (Conn. Super. Ct. Aug. 6, 2014), or in a presumption that a return of service is valid, *Slomowitz v. Walker*, 429 So. 2d 797, 798 (Fla. Dist. Ct. App. 1983). These presumptions, in turn, explain why so many jurisdictions recognize a return of service as establishing the plaintiff's prima facie case as to the sufficiency of service of process.

[¶26] Our holding in *Crotteau* is contrary to the weight of precedent from other jurisdictions. Although we have said that federal authority interpreting F.R.C.P. 12 is highly persuasive in interpreting W.R.C.P. 12 "because of the virtual identity of the two rules," *PanAmerican*, 916 P.2d at 989, our opinion in *Crotteau* provided little explanation for our departure from the federal precedent. *Rosty*, in contrast, is consistent with the weight of authority from federal and other state courts. The question in *Rosty* was whether the defendant's mother was competent to receive service of process. The burden appropriately shifted to the defendant because he had better access to the facts about his mother's competency. Similarly, in this case, Mr. Ludlow has better access to the facts relating to his usual place of abode, and it is appropriate to shift the burden to him to prove that service was not effected at his usual place of abode. *See Hardig & Parsons v. Franklin*, 1996 Mich. App. LEXIS 1462, 2 (Mich. Ct. App. Aug. 16, 1996) (After the plaintiff "established a prima facie showing of jurisdiction by attaching the return receipt . . . the burden of going forward shifted to defendant because he had the superior knowledge as to whether his purported agent was his agent and whether he received actual notice.").

[¶27] We distinguished *Rosty* from *Crotteau* because the underlying question, the competency of the person who received service, was different from that in *Crotteau*. The case before us now presents the same underlying question as *Crotteau*, the defendant's usual place of abode. Because we cannot distinguish this case from *Crotteau*, we must directly address our holding in that case. For the reasons discussed above, we now hold,

8

consistent with our decision in *Rosty*, ¶ 25, 272 P.3d at 956, that when a return of service provides a prima facie showing of the sufficiency of service, the burden shifts to the defendant to rebut the plaintiff's showing. We overrule *Crotteau*, 656 P.2d 1166, to the extent it conflicts with our holding in this case.

[¶28] When the burden shifts to the defendant, the next question becomes what quality of evidence is required to carry that burden. In *Crotteau*, 656 P.2d at 1168, we took note of the rule in federal cases that the defendant has to overcome the plaintiff's prima facie case with "strong and convincing evidence." We did not adopt that standard, however, because we said that the burden never shifted to the defendant. In *Rosty*, where we distinguished *Crotteau*, we said that "[t]he defendant has to overcome the proof by strong and convincing evidence." *Rosty*, ¶ 25, 272 P.3d at 956 (citing *Hicklin v. Edwards*, 226 F.2d 410 (8th Cir. 1955)). We find this formulation, or something very similar, to be widely used in other jurisdictions. *E.g.*, *Harvey v. Slacum*, 29 A.2d 276, 278 (Md. 1942) ("clear and satisfactory"); *Hoffman*, 706 S.W.2d at 579 ("clear and convincing"). The Oklahoma Supreme Court provided this explanation:

> At common law such a return [of service] by an officer was conclusive. Such rule, however, is not in force in this state, but a more liberal rule to the effect that, while not conclusive, yet it is prima facie evidence of its truthfulness and it requires strong and convincing proof to overcome it. *Ray v. Harrison*, 32 Okla. 17, 121 P. 633. In *Jones v. Jones*, 57 Okla. 442, 154 P. 1136, this court, in discussing this question, said:
>
> > "This is a just and a wholesome rule, for under it, an officer, by his return, cannot make that which is false true. Where a judgment, regular upon its face, based upon an officer's return showing personal service, is sought to be vacated and set aside, public policy demands that it should not be overcome, except upon clear and convincing proof that the return is false."

*Mayhue v. Clapp*, 261 P. 144, 145 (Okla. 1927). Persuaded by this authority, and consistent with our decision in *Rosty*, we hold that when the burden shifts to the defendant to demonstrate insufficiency of service of process, that demonstration must be made with clear and convincing evidence.[2]

---

[2] The term "strong and convincing," which we used in *Rosty*, ¶ 25, 272 P.3d at 956, is synonymous with the more familiar standard of "clear and convincing" evidence. We agree with this observation from the

[¶29] With that prologue, we can now review the district court's decision. The district court determined that Ms. Wise had made her prima facie showing with the return of service. The district court correctly shifted the burden of proof to Mr. Ludlow to overcome Ms. Wise's prima facie case with strong or clear and convincing evidence. It denied the motion, concluding that Mr. Ludlow failed to meet that burden.

[¶30] As stated above, "We review factual determinations relating to service of process by accepting the evidence of the prevailing party as true and giving that party the benefit of all favorable inferences that can fairly be drawn from the evidence while disregarding conflicting evidence." *Lundahl*, ¶ 7, 334 P.3d at 561. In addition to the return of service that established a prima facie showing, Ms. Wise submitted evidence that Mr. Ludlow's driver's license listed the Ravine Road address, and that he stored a tool box at that address. She also presented the detective's affidavit stating that Mr. Ludlow's mother had said "yes" when asked if Mr. Ludlow lived at that address. Applying our standard of review, we cannot say that the district court erred when it assessed the opposing evidence and determined that Mr. Ludlow had not met his burden of proving his claim with clear and convincing evidence.

[¶31] We turn now to the issues raised in Ms. Wise's appeal. She first contends that the district court should not have allowed the jury to consider comparative fault. She points out that Mr. Ludlow admitted fault in his testimony, and asserts that he presented "little to no evidence" of negligence on the part of Ms. Wise. Accordingly, she argues that the district court should have granted her motion for judgment as a matter of law as to his liability, and should not have given a comparative fault instruction to the jury.

[¶32] Wyo. Stat. Ann. § 1-1-109(c)(i)(A) (LexisNexis 2013) provides that a jury should determine "the percentage of fault attributable to each actor." The term "actor" is defined as "a person or other entity, including the [plaintiff], whose fault is determined to be a proximate cause of the death, injury or damage, whether or not the actor is a party to the litigation." Wyo. Stat. Ann. § 1-1-109(a)(i). The term "fault" is defined to include "acts or omissions, determined to be a proximate cause of death or injury to person or property,

---

district court's decision letter:

> The Court was unable to locate a definition from case law of "strong and convincing evidence"; however, the Court finds that the strong and convincing standard is likely similar to a clear and convincing standard, which has been defined as "that kind of proof which would persuade a trier of fact that the truth of the contention is highly probable." *Ohio Casualty Insurance Co. v. W.N. McMurry Construction Co.*, 2010 WY 57, ¶ 15, 230 P.3d 312, 320 (Wyo. 2010).

that are in any measure negligent." Wyo. Stat. Ann. § 1-1-109(a)(iv). The damages a plaintiff receives are "diminished in proportion to the amount of fault" attributed to that plaintiff by the jury. Wyo. Stat. Ann. § 1-1-109(b). This system is commonly referred to as comparative fault.

[¶33] Ms. Wise claims there was no evidence suggesting that she was at fault, and that the district court should have granted her motion for judgment as a matter of law. "We review denial of the motion for judgment as a matter of law taking as true all of the non-moving party's evidence with its reasonable inferences," and we "inquire whether a reasonable jury could reach but one verdict." *Board of County Comm'rs v. Bassett*, 8 P.3d 1079, 1082-83 (Wyo. 2000) (citing *Anderson v. Duncan*, 968 P.2d 440, 442 (Wyo. 1998)). We have also stated that the granting of a motion for judgment as a matter of law "deprives the opposing party of the opportunity to have the jury determine the facts, and the court should, therefore, use caution in granting such a judgment." *Anderson*, 968 P.2d at 442.

[¶34] In support of her contention, Ms. Wise points out that Mr. Ludlow was driving, while she was only a passenger. She asserts that she, as the passenger, could not be found at fault for Mr. Ludlow's negligent driving. She relies on a decision from the intermediate appellate court of Washington affirming the trial court's decision not to instruct the jury on the passenger's contributory negligence.

> The rule holding a passenger contributorially negligent in willingly continuing to ride with an intoxicated driver has no application unless something in the driver's conduct betrays his being under the influence. It is error for a court to submit to a jury the issue of a driver's intoxication when there is no evidence to support such a finding. Mere evidence of consumption of small amounts of alcohol without other evidence of intoxication is insufficient to present a jury question on intoxication.

*Murray v. Amrine*, 626 P.2d 24, 29 (Wash. Ct. App. 1981) (internal citations omitted).

[¶35] Ms. Wise's reliance is misplaced. The facts in *Murray* are significantly different from the ones presented here. In *Murray*, the plaintiff never alleged that alcohol consumption by the driver was a cause of the accident. Although there was evidence of some drinking, there was no evidence that alcohol consumption contributed to the accident. The Washington court summed it up this way:

> Defendant testified that he drank one shot of whiskey before meeting plaintiff the evening of the accident. Defendant had not finished a second drink of whiskey when the accident

11

occurred. He testified that his driving was unaffected by the alcohol, and no evidence was introduced by either party to contradict this testimony. Plaintiff neither alleged in his complaint that defendant's driving contributed to the accident, nor was the jury instructed on intoxication as a possible basis for finding defendant negligent. Under these circumstances no reasonable jury could find plaintiff contributorially negligent for failing to protest defendant's drinking.

*Id*. In the case before us now, there is no question that alcohol was a contributing factor to the accident. In her Complaint, Ms. Wise asserted that Mr. Ludlow was negligent because he drove while intoxicated. In his testimony, Mr. Ludlow admitted that he was under the influence and should not have been driving. He had been drinking for approximately eight hours that day, and his blood alcohol level was measured at 0.14% approximately two hours after the accident. The legal limit for driving in Wyoming is 0.08%. Wyo. Stat. Ann. § 31-5-233(b)(i). More significantly, in terms of comparative fault, our review of the record reveals evidence from which the jury could reasonably find Ms. Wise at fault because she was aware or should have been aware of Mr. Ludlow's condition prior to going for a ride with him.

[¶36] Ms. Wise was the one who asked Mr. Ludlow to take her for a ride in his Corvette. At the time she asked him for the ride, both had consumed significant amounts of alcohol. Earlier that day, Ms. Wise got a ride to the Sandbar Lounge from someone identified as "Mike." Ms. Wise testified that she did not know how long Mike had been at the other bar, or how much he had to drink before he gave her a ride. Similarly, before asking Mr. Ludlow for a ride, Ms. Wise made no effort to ascertain how long he had been at the bar, or how much he had drunk. She testified that she was "under the impression he was drinking soda," but also said she was unsure why she had that impression, and admitted that it was probably unusual for him to be drinking soda in a bar. In addition, a friend of Ms. Wise's testified that Ms. Wise told her after the accident that Ms. Wise and Mr. Ludlow "were out and had had drinks," suggesting that Ms. Wise was aware that Mr. Ludlow had been drinking.

[¶37] When we evaluate this evidence under the applicable standard of review, we credit it as true. Given this evidence, a jury could reasonably conclude that Ms. Wise's judgment was impaired by her alcohol consumption that afternoon and that she asked Mr. Ludlow for a ride without making a reasonable effort to ascertain whether he had been drinking or how much he had drunk that day. Based on her admission that Mr. Ludlow was unlikely to be drinking soda at a bar, along with Mr. Ludlow's high blood alcohol level and Ms. Wise's statement to a friend that they had been out and had had drinks, the jury could reasonably reject her testimony that she "wouldn't have guessed that [Mr. Ludlow] was drunk." From this evidence, a jury could reasonably find

12

that Ms. Wise had not exercised that degree of care expected of an ordinary person under the circumstances. It could reasonably find that she was partially at fault.

[¶38] We further note that counsel for Ms. Wise acknowledged in his closing argument rebuttal that Ms. Wise may share some fault:

> You know, [Ms. Wise] could have done more. She could have, I guess, made sure that Mr. Ludlow actually hadn't been drinking. She could have asked other people. There are some things here she could have done. And so she's agreed that, yeah, she's partially at fault. And I would suggest that that is like 5 percent.

This admission is a recognition that, contrary to Ms. Wise's assertion on appeal, there was some evidence from which a jury could reasonably decide that Ms. Wise shared in the fault. The district court did not err in denying her motion for judgment as a matter of law.

[¶39] Ms. Wise also contends the district court erred by instructing the jury on comparative fault because there was no evidence to support the instruction. We have already concluded that the evidence of Ms. Wise's fault was sufficient to justify the district court's denial of her motion for judgment as a matter of law. It is also sufficient to support the district court's decision to instruct the jury on comparative fault.

[¶40] She further asserts that it was improper to instruct the jury on comparative fault because Mr. Ludlow admitted being at fault. There is no merit in this claim. Mr. Ludlow did admit fault during the trial. During direct examination, he was asked, "So, sir, do you accept your fault and responsibility for this accident?" His answer was, "Absolutely." During cross examination by Ms. Wise's counsel, he was asked, "Mr. Ludlow, why is it that it took you up until just two minutes ago to say that you accepted the fault and responsibility for – for Mary's injuries?" He replied, "I never denied responsibility." He was also asked on cross examination, "Do you agree that your – by accepting fault, does that mean that you agree that you were acting in reckless disregard of Mary Wise and her health?" He answered, "I don't know about reckless disregard; but I was – I was careless. I think we both made some bad decisions that day."

[¶41] In her appeal, Ms. Wise seeks to portray Mr. Ludlow's testimony as an unqualified admission of 100% of the fault. She asserts that this admission made it unnecessary and improper for the district court to instruct the jury on comparative fault. However, while Mr. Ludlow did accept fault and responsibility, he also testified that he and Ms. Wise

13

both made bad decisions. This was not an unequivocal admission of 100% of the fault that eliminated comparative fault as an issue to be determined by the jury. The district court properly instructed the jury on comparative fault.[3]

[¶42] Ms. Wise's final three issues raise evidentiary questions.

> A trial court's rulings on the admissibility of evidence are entitled to considerable deference, and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal. The appellant bears the burden of showing an abuse of discretion. Even when a trial court errs in an evidentiary ruling, we reverse only if the error was prejudicial. The appellant must show a reasonable probability that, without the error, the verdict might have been different.

*Glenn v. Union Pacific R.R. Co.*, 2011 WY 126, ¶ 12, 262 P.3d 177, 182 (Wyo. 2011) (quoting *Schmid v. Schmid*, 2007 WY 148, ¶ 10, 166 P.3d 1285, 1288 (Wyo. 2007)).

[¶43] Ms. Wise first asserts that the district court erred in not allowing evidence of her financial condition to explain gaps and delays in her medical treatment. Mr. Ludlow presented evidence that Ms. Wise sought treatment for a chest contusion and bruises and abrasions immediately after the accident. She did not seek treatment for her back problems until several months later and at the time of trial had not undergone the surgery her doctor had recommended. Mr. Ludlow contended that the delays were relevant to his assertion that the accident had not caused the back problems, and to his claim of failure to mitigate damages.

[¶44] Ms. Wise sought to counter this evidence with testimony that the delays were due to her lack of financial resources. Her counsel referred to this evidence in his opening statement. Mr. Ludlow objected, and made a motion in limine to exclude this evidence. He argued that the evidence was not relevant and that, in order to impeach Ms. Wise's testimony on this topic, it would be necessary to introduce evidence that his automobile insurance had paid for her medical treatment and would have paid for additional treatment, and that Ms. Wise had medical insurance that would have provided benefits if she had obtained treatment.

---

[3] Ms. Wise also asserts that the district court improperly allowed the jury to impute the driver's negligence to her. It did not. Ms. Wise has failed to identify any jury instruction which would have permitted the jury to impute Mr. Ludlow's negligence to her.

[¶45] The district court heard brief arguments on the motion at the end of the first day of trial, and considerably longer arguments at the beginning of the second day. Counsel for Ms. Wise noted that there was some dispute as to the extent to which Mr. Ludlow's insurance had paid Ms. Wise's medical bills, and acknowledged that resolving the dispute would require "sort of a trial unto itself," which had "the potential of a Pandora's box." Counsel for Mr. Ludlow further emphasized the "Pandora's box" problem, indicating that there were also disputes over whether and why Mr. Ludlow's insurance had denied some of Ms. Wise's claims, the length of time the coverage lasted, the policy limits, whether and why Ms. Wise's insurance had denied some of her claims, and the amount of her deductible. He argued that these disputes had the potential to confuse and mislead the jurors. Although the rule was never explicitly mentioned, the arguments were plainly based on W.R.E. 403, which provides that, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[¶46] The district court's analysis was consistent with W.R.E. 403:

> [I]f we go down that road, I don't see how the Court could possibly even find a place to draw a line in that process. It lends itself to a myriad of issues as both parties acknowledge and that I've summarized here. And while I recognize that there's some, certainly, probative value to the plaintiff seeking to go down that road, both as to – primarily mitigation, but also as to causation, a little bit overlapping, I think the probative value under these circumstances, based on the record I have, under the circumstances . . . is such that that probative value would be substantially outweighed by the danger of unfair prejudice, which I've touched upon; confusion of the issues particularly by the jury; misleading the jury; and by the time considerations that are involved to a limited degree. . . . And so I think it's best to, under Rule 403, take that approach at this time.

[¶47] Ms. Wise contends that a trial court should not exclude evidence under Rule 403 "when the balance between the probative worth and the countervailing factors is debatable; there must be a significant tipping of the scales against the evidentiary worth of the proffered evidence. 22 Wright, [Miller & Kane, *Federal Practice and Procedures: Evidence*] § 5221 [(2014)]." (Emphasis omitted.) She argues that the district court's ruling provides "little to no" indication that the required balancing was performed. We disagree. The district court's comments, quoted above, clearly demonstrate that it engaged in the appropriate analysis. The district court did not abuse its discretion in

excluding evidence of Ms. Wise's financial condition.

[¶48] In her second evidentiary issue, Ms. Wise claims the district court erred in allowing the testimony of Dr. Gretchen Brunworth, a medical expert called on behalf of Mr. Ludlow. Dr. Brunworth testified that Ms. Wise's back problems were not caused by the accident. Ms. Wise contends that this testimony should have been excluded under the standard set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786; 125 L.Ed.2d 469 (1993). We have adopted the *Daubert* standard for determining the admissibility of expert testimony, and explained it as follows:

> A qualified expert witness may testify about scientific, technical, or specialized knowledge if such testimony will help the jury understand the case. W.R.E. 702. When determining the admissibility of expert testimony, the district court's gatekeeping function requires it to determine whether the methodology or technique used by the expert to reach his conclusions is reliable and, if so, the court must then determine whether the proposed testimony "fits" the facts of the particular case. *Bunting v. Jamieson*, 984 P.2d 467, 471-72 (Wyo. 1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591-93, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993)).

*Easum v. Miller*, 2004 WY 73, ¶ 16, 92 P.3d 794, 799 (Wyo. 2004). In cases dealing with the admissibility of an expert opinion under the *Daubert* standard,

> We review de novo the question whether the district court performed its gatekeeper role and applied the proper legal standard in admitting or excluding an expert's testimony. We then review for an abuse of discretion a district court's decision to admit or reject expert testimony. *Seivewright v. State*, 7 P.3d 24, 29 (Wyo. 2000); *Springfield v. State*, 860 P.2d 435, 438-39 (Wyo. 1993); *Betzle v. State*, 847 P.2d 1010, 1022 (Wyo. 1993).

*Easum*, ¶ 21, 92 P.3d at 800.

[¶49] Ms. Wise filed a motion in limine to exclude Dr. Brunworth's testimony. The district court considered the motion during trial when, out of the jury's hearing, it heard testimony from Dr. Brunworth and evaluated that testimony in accordance with the *Daubert* standard. The district court ruled that the testimony was admissible. Ms. Wise challenges that decision, contending that the methodology Dr. Brunworth used to form her opinions is not sufficiently reliable to render her testimony admissible.

[¶50] Dr. Brunworth testified that she reached her opinion using the methodology of differential diagnosis. We have explained this methodology as follows:

> "'Differential diagnosis' refers to the process by which a physician 'rules in' all scientifically plausible causes of the plaintiff's injury. The physician then 'rules out' the least plausible causes of injury until the most likely cause remains. The remaining cause is the expert's conclusion." *Hollander v. Sandoz Pharmaceuticals*, 289 F.3d 1193, 1209 (10th Cir. 2002) (citation omitted).

*Easum*, ¶ 29, 92 P.3d at 802 (footnote omitted). There is no question that differential diagnosis is a sufficiently reliable methodology to satisfy the *Daubert* test. As we have said,

> In general terms, the reliability of differential diagnos[i]s is easily resolved. "Most circuits have held that a reliable differential diagnosis satisfies *Daubert* and provides a valid foundation for admitting an expert opinion. The circuits reason that a differential diagnosis is a tested methodology, has been subjected to peer review/publication, does not frequently lead to incorrect results, and is generally accepted in the medical community." *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1208 (8th Cir. 2000); *see Westberry* [*v. Gislaved Gummi AB*], 178 F.3d [257,] 262-63 [(4th Cir. 1999)]. Physicians routinely determine medical causation by this technique, and we have previously determined that the technique of differential diagnosis for establishing causation can be reliable under *Daubert. See Reichert v. Phipps*, 2004 WY 7, ¶ 18, 84 P.3d 353, ¶ 18 (Wyo. 2004).

*Easum*, ¶ 30, 92 P.3d at 802.

[¶51] Ms. Wise asserts, however, that Dr. Brunworth did not follow the differential diagnosis methodology. The record demonstrates otherwise. Dr. Brunworth's opinion that Ms. Wise's injuries were not caused by the accident was based in large part on the fact that she did not report the problems with her back and neck until several months after the accident. In cross examination, Dr. Brunworth was asked if it was possible that the pain from Ms. Wise's chest contusion could "mask" the symptoms of a spinal injury, thus explaining Ms. Wise's delay in reporting spinal injuries. The doctor agreed that was possible, and in follow-up cross examination testified as follows:

Q.     I didn't see in your report any reference to masking. . . ;  but you didn't consider that, in fact, the more painful symptoms could have dominated over the disk injuries; correct?

A.     I considered that.  I may not have documented it in there. . . .

Q.     So, Doctor, if it was a possibility, why wouldn't you have put it in there if you actually performed a differential diagnosis?

A.     I thought about all of those processes.  I just did not document it.  Nobody asked me that.  It was in my thought process when I determined that I felt that the cervical and lumbar problems were not related to the accident.

Similarly, Dr. Brunworth testified that Ms. Wise's age and family history should be addressed in the process of a differential diagnosis and, while she considered those factors, that is not reflected in her written report.  This testimony shows that Dr. Brunworth did follow the differential diagnosis methodology, although she did not document every step of the process in her written report.

[¶52]  Moreover, Ms. Wise's claim that Dr. Brunworth's opinion is invalid because she did not properly employ that methodology reflects a basic misunderstanding of the *Daubert* standard.  The question in applying *Daubert* is "whether the ***methodology or technique*** used by the expert to reach his conclusions is reliable."  *Easum*, ¶ 16, 92 P.3d at 799 (emphasis added).  Ms. Wise does not contend that differential diagnosis is an unreliable methodology.

[¶53]  The validity of an expert opinion is for the jury to decide, not a matter for the court to decide when applying the *Daubert* standard.

It cannot be overemphasized that methodology should be distinguished from the conclusion of the expert.  A trial judge need not and should not determine the scientific validity of the conclusions offered by an expert witness. Rather, to decide admissibility, the trial judge should only consider the soundness of the general scientific principles or reasoning on which the expert relies.

*Easum*, ¶ 18, 92 P.3d at 799.  An expert's "conclusions may indeed be wrong," but if his "methodology is reliable," then "the accuracy of his conclusions presents a jury question

that must be presented at trial." *Id.*, ¶ 38, 92 P.3d at 804. Differential diagnosis is a reliable methodology. If Dr. Brunworth did not correctly follow the methodology of differential diagnosis, that could affect the weight and persuasiveness of her opinions, but does not render that evidence inadmissible under *Daubert*.

[¶54] Ms. Wise further claims that Dr. Brunworth's testimony did not meet the reliability criterion of *Daubert* because she relied solely on a review of medical records, and did not conduct a physical examination or take a medical history from Ms. Wise. Like the previous argument, however, this is a challenge to the weight to be accorded Dr. Brunworth's opinion. The failure to conduct a physical examination or obtain a medical history may affect the credibility or persuasiveness of the expert's testimony, but does not make the testimony inadmissible. The district court did not err in allowing Dr. Brunworth to testify.

[¶55] In her final evidentiary issue, Ms. Wise claims the district court erred in denying the admission into evidence of Mr. Ludlow's Answer to the Complaint. At the end of his direct examination, Mr. Ludlow admitted fault and responsibility. On cross examination, Ms. Wise's counsel questioned him about that admission:

> Q. Mr. Ludlow, why is it that it took you up until just two minutes ago to say that you accepted the fault and responsibility for – for [Ms. Wise's] injuries?
>
> A. I never denied responsibility.
>
> Q. You've looked at the Complaint in this case where – that's the document that was used to start this lawsuit – correct?
>
> A. Yes.
>
> Q. And one of the allegations in that Complaint says, [t]he aforesaid collision was caused by defendant being too impaired by his alcohol consumption to safely operate his vehicle. Do you remember in your Answer you denied that allegation?

Counsel for Mr. Ludlow objected to the question. In argument held out of the jury's hearing, he asserted that introducing the Answer raised "an area of attorney-client privilege." Counsel said he was the one who prepared the Answer, on the basis of his discussions with Mr. Ludlow. Counsel for Ms. Wise countered that the Answer was a public document, and a document "we can let the jury look at."

19

[¶56]   The district court sustained the objection, explaining:

> I'll sustain the objection under Rule 403.   I think any probative value is outweighed substantially by unfair prejudice and confusion of the issues by the jury, particularly as it relates to how legal documents are generated in consultation with an attorney as opposed to Mr. Ludlow's personal views of the situation.

[¶57]   Following the district court's ruling, counsel for Ms. Wise made another attempt to introduce the Answer.  He asked Mr. Ludlow:

> Q.      Can you tell us why it is that you chose today, five minutes ago, to get up here and accept fault?
>
> A.      I don't think I ever denied that this was my fault.

Counsel for Ms. Wise then addressed the district court:  "Your Honor, I would introduce [the Answer] now as an impeaching document."   Counsel for Mr. Ludlow made the "same objection," and asserted that the question of admitting the Answer into evidence had just been addressed.  The district court sustained the objection.

[¶58]   We find no abuse of discretion in the district court's decision to deny admission of the Answer.  The Answer, by itself, has marginal probative value and was likely to do little more than confuse the jury.  It can only be understood by referencing the allegations in the Complaint.  The specific paragraph of the Answer referenced by counsel stated only that Mr. Ludlow "denies each and every allegation contained in ¶ 5 of the Complaint."   Paragraph 5 of the Complaint alleged that the collision "was caused by [Mr. Ludlow] being too impaired by his alcohol consumption to safely operate his vehicle."   This allegation can reasonably be interpreted as alleging that Mr. Ludlow's alcohol consumption was the *sole* or *only* cause of the accident.  The denial of that allegation was consistent with Mr. Ludlow's trial testimony.  The Answer also raised comparative fault as an affirmative defense.  In short, the line of questioning which counsel sought to pursue had marginal probative value.  Additionally, the district court was concerned that inquiry into the contents of the Answer would lead to time-consuming questions about the drafting of the Answer, potentially soliciting testimony otherwise inadmissible because of the attorney-client privilege.  Finally, in order to prevail on this claim of error, Ms. Wise must establish prejudice.  She has failed to do so.  There is no reasonable probability that if the Answer had been admitted, the verdict might have been different.

[¶59]   We therefore affirm the district court's decisions in both Ms. Wise's appeal and Mr. Ludlow's cross-appeal.

20